Fred Radatz, Appellee, v. The Tribune Company,
Appellant.

Gen. No. 39,657.

Opinion filed January 10, 1937.   Rehearing denied January 24, 1937.

ROBERTSON, CROWE & SPENCE, of Chicago, for appel-
lant; BURT A. CROWE and HENRY L. McINTYRE, of
Chicago, of counsel.

JAMES A. O'CALLAGHAN and WILEY W. MILLS, both
of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Defendant appeals from a judgment in the sum of $6,500 entered in favor of plaintiff in an action on the case for personal injuries. It is argued for reversal that a motion to direct a verdict for defendant at the close of all the evidence should have been given, that defendant's motions for judgment notwithstanding the verdict and for a new trial should have been allowed, and that the verdict is against the manifest weight of the evidence.

It appears from the evidence that plaintiff, then a lad of 12 years of age, while riding on the tailboard of one of defendant's trucks was severely injured when the driver of the truck backed into a lamp post at the northwest corner of the intersection of Farrell and Lyman streets in Chicago on February 11, 1922.

The driver of the truck was William Eckholm, who, the uncontradicted evidence showed, had received repeated orders from his superiors not to allow any person on the truck or wagons unless they were in the employ of defendant company. Orders to this effect were posted about the barns where the trucks were kept and had been personally given by defendant's circulation manager to the driver.

On the day in question Eckholm was driving a three-ton Packard truck; he came up to the intersection of Haynes court and Lyman street a little after 12 o'clock noon; he says he was lost, had never been there before; that he saw three boys in front of a school there and asked them where Loomis street was; he told them he wanted to go to 31st and Morgan streets. Eckholm says the boys were only three in number, and that in response to his question to one of them a boy replied, "Let me get on and we will show you." There is a conflict in the evidence as to whether he invited the boys to get on. At any rate his evidence shows that

two of the boys got on and sat in the seat beside him, while one stood on the running board of the truck. The driver also testified that he suddenly noticed ''a bunch of kids'' on the tailgate of his truck; that he stopped three times and chased them off while he was driving east in Lyman street toward 31st and Morgan streets. One of the boys, named Schultz, testified that he was the boy who stood on the running board, and that the boys in the seat were William Knapp and Herbert Steike. Schultz also testified that plaintiff was with the other boys when they were addressed by the driver; that all the boys got on the truck before it started, and that plaintiff got on the tail end of the truck. Schultz says the driver looked at the rear of the truck as he backed up against the lamp post, and that he was looking at plaintiff; that Steike and Knapp were boys in his class at school, and that they were at the corner of Lyman street and Haynes court where they met plaintiff; the day was cold but there was no snow or ice; plaintiff was not there when they first arrived at the corner but all four were there when the truck came up, and the driver of the truck addressed all of them. Plaintiff gave similar testimony; he says he was the last to get on the truck, and that the driver waited until he got around to the back; that the driver looked at him through the window of the cab in which he sat, and then proceeded east on Lyman street. Knapp's whereabouts at the time of the trial seem to have been unknown, and he did not testify. A statement tending to impeach Schultz on some points was received in evidence. It was in the handwriting of defendant's former attorney and was signed by Schultz in the office of the attorney after a former trial. This written statement said that Schultz did not see plaintiff on the truck until it had gone a little past Loomis street, when he saw plaintiff sitting on the tailgate of the truck. The statement also says the

driver did not look back and did not know plaintiff was on the truck. By stipulation another written statement signed by Steike was admitted in evidence, it being agreed that if he were present he would testify according to the contents of the statement. In this statement Steike said that after the truck traveled 250 feet he saw plaintiff run for the truck and hitch onto the tailboard of it. All of these boys were students at the Holy Cross Lutheran school.

At the request of defendant the court submitted to the jury the following special interrogatory: ''Was the plaintiff before and at the time of the accident in question riding on the defendant's truck without the knowledge and permission of the defendant's driver?'' To this question the jury returned the answer, ''No.''

It also appears that no instruction was given at the request of plaintiff, while 17 instructions covering the case from every possible standpoint were given at the request of defendant. The evidence (much of which is contained in an additional abstract filed by plaintiff) discloses a sharp conflict on material points. It is undisputed that three of the boys were permitted by the driver to ride upon the truck at the time in question, and there seems no reason why any one of them should have wished to go to 31st and Morgan streets except upon his invitation. Apparently the jury was not inclined to the opinion that permission was given to three of the boys and refused to the fourth. However, the weight of all this evidence was peculiarly for the jury and we would not be warranted in disturbing its verdict. Assuming a question of fact for the jury, there were no errors that would have justified a new trial. Defendant's contention that the court should have entered judgment notwithstanding the verdict is not essentially different from its contention that an instruction in its favor should have been given at the close of all the evidence. *Denton v. Midwest Dairy*

*Products Corp.*, 284 Ill. App. 279, 284; *McNeill v. Harrison & Sons, Inc.*, 286 Ill. App. 120. The controlling question in the case therefore turns out to be whether the requested instruction should have been given in favor of the defendant at the close of all the evidence. This is, of course, a question of law. The defendant vigorously contends that the instruction should have been given because it says there was no evidence in the record tending to show, or from which it could reasonably be found, that the driver in inviting plaintiff to ride on the truck was acting within the scope of his employment and within the scope of defendant's business so as to make defendant liable for negligently injuring plaintiff. While a large number of cases from different jurisdictions are cited, defendant contends that the case falls squarely within the rule announced by this court in *Scott v. Peabody Coal Co.*, 153 Ill. App. 103; *Collins v. City of Chicago*, 187 Ill. App. 30; and *Collins v. Noll Baking & Ice Cream Co.*, 226 Ill. App. 124. Defendant says the rule to be deduced from these cases is, "If a servant employed by a master in the driving of a . . . wagon has been instructed not to permit boys to ride with him on such wagon and violates such instruction and the boy riding upon such wagon is injured, the master is not liable." There are, we think, two answers to this contention. In the first place, each of the three cases cited and relied on are clearly distinguishable from the instant case in that the boys who were invited to ride upon the vehicle and did so were riding simply for their own pleasure, while in this case the purpose of the boys in accepting the invitation to ride upon the truck was at least partly to render assistance to the driver in the transaction of the business he was employed to do and was doing for the defendant corporation. In the second place, we think the doctrines announced in these Appellate Court opinions have been very much modified by rules of law

subsequently announced by the Supreme Court, particularly in the case of *Hayes v. Sampsell,* 274 Ill. 258. In that case it appeared that Hayes, a boy 10 years of age, was acquainted with the motorman operating one of defendant's street cars. The motorman, seeing the lad on the street in the down town district, invited him to ride home on the street car. Before the termination of the journey the boy was injured through the negligent starting of the car by the servants of defendant. Plaintiff testified that he did not pay any fare and that he did not intend to pay any. There was a conductor in charge of the street car, and it was the duty of the motorman to signal the conductor in case there was a passenger on the platform, where the boy stood with him. The motorman did not so signal. Upon suit by the plaintiff it was contended for defendant that the plaintiff was not a passenger but at most a mere licensee, and that defendant owed no duty except not to wantonly injure him. On the other hand, the plaintiff contended that although not a passenger in the strict sense of the term, he was rightfully on the car and that the defendant owed to him the duty of reasonable care. There was a judgment for plaintiff and defendant appealed. The judgment was affirmed after a review of the cases applicable in this and other States. In reply to the contention of the defendant that the boy was a trespasser or mere licensee and that no duty existed, therefore, except to refrain from wilfully or wantonly injuring him, the court said: ''Those cases, however, apply to adults and are not meant to apply to the case of a child of immature age. The question here is not as to the duty of plaintiff in error toward adults, but is, what is that duty in respect to a child of immature years? An adult certainly has no right to enter a car, such as that boarded by defendant in error, except as a passenger. If he should

do so upon the invitation of one in charge of the car and without any expectation of paying his fare he will be bound to know that such an act is improper and will be held to be in collusion with the one in charge of the car to defraud the street car company. A child who has not yet arrived at the age of discretion and who might innocently accept such an invitation is not held to such a strict accountability.''

The court quoted with approval from the opinion of the Chief Justice in *Danbech v. New Jersey Traction Co.,* 57 N. J. Law, 463, as follows:

''The question, is not as to the duty of the defendant towards persons of mature years, but what is that duty with respect to children? It might be quite reasonable to declare as a rule of law that a grown person has no right to enter a car except as a passenger, and, if he does so as the friend of the conductor, that such a situation creates no relationship between such person and the car company, and that the latter is under no obligation to see to his safety; while it might be unreasonable in the extreme to apply the same rule to a child under similar circumstances. Very few of the rules that regulate the conduct of a man with his fellow could be applied with the least show of reason, to his intercourse with children. It is the legal duty of everyone dealing with a child to protect it against its own indiscretion.''

While these cases involved a situation where the defendant was a common carrier and its servants, therefore, had implied power to invite passengers to go upon the cars, we think in principle they are not distinguishable from the instant case. It is suggested in this case that because the uncontradicted evidence showed that the driver of the truck was directed not to permit anyone except an employee of defendant to ride thereon, any one accepting such an invitation

would be a trespasser and that defendant would not be liable to him for negligence of its servants. Such a rule would be impracticable and is not supported by the cases in this or any other State. Thus in the early case of *Sleath v. Wilson*, 9 Carrington & Payne, 355 English Common Law Reports, 607, it appeared that the defendant was sued on account of the negligence of his servant hired to drive his horse and carriage. It appeared from the evidence that the master had directed the servant to drive to a certain place but that the servant improperly drove to another for the purpose of delivering a parcel of his own, and while so driving injured plaintiff. The defendant contended that the servant was not at that time engaged in his master's business and that the action could not be maintained for that reason. Erskine, J., said: ''But I am of opinion that this action may be maintained. I think the law has been most properly laid down by Mr. Baron Parke, in the case which has been cited. It is quite clear that if a servant without his master's knowledge takes his master's carriage out of the coach-house, and with it commits an injury, the master is not answerable; and on this ground, that the master has not entrusted the servant with the carriage. But whenever the master had entrusted the servant with the control of the carriage, it is no answer, that the servant acted improperly in the management of it. If it were, it might be contended that if a master directs his servant to drive slowly, and the servant disobeys his orders, and drives fast, and through his negligence occasions an injury, the master will not be liable. But that is not the law; the master in such a case will be liable, and the ground is, that he has put it in the servant's power to mismanage the carriage, by entrusting him with it.'' *Freehill v. Consumers Co.*, 243 Ill. App. 1; *Carl Corper Brewing & Malting Co. v. Huggins*, 96 Ill. App. 144; *Loomis v. Hollister*, 75 Conn. 718–722, 55 Atl. 561; *Gross v. Mertz*, 214 N. Y. Supp.

198; *Rook v. Schultz*, 100 Ore. 482, 198 Pac. 234; *Kavale v. Morton Salt Co.*, 242 Ill. App. 205; *Moore v. Rosenmond*, 238 N. Y. 358.

Without discussing in detail all the cases cited in the briefs, which would extend this opinion unduly, we think the principle of law announced in the above case is controlling and reasonable. Notwithstanding the direction given by defendant to the driver not to let any persons other than employees ride on the truck, it appears that while he was in the course of his employment and for the purpose of assisting him in carrying out the duties of that employment, he invited these boys to ride upon the truck. He disobeyed his instructions but he disobeyed while in the course of his employment and about the master's business.

We find no error in the record and the judgment entered by the trial court is affirmed.

*Affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.