Henry Kijowski, Minor, by Joseph Kijowski, His
Father and Next Friend, Appellee, v. Times Pub-
lishing Corporation, Appellant.

Gen. No. 40,210.

Opinion filed January 11, 1939. Rehearing denied February 6, 1939.

EDWARD W. RAWLINS and JAMES F. WRIGHT, both of Chicago, for appellant; FAY WARREN JOHNSON, of Chicago, of counsel.

ALFRED ROY HULBERT and GEORGE F. CALLAGHAN, both of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This suit was instituted by the plaintiff, a minor, by his father and next friend, against the defendant to recover damages on account of personal injuries sustained by him on August 22, 1936, as the result of an automobile accident (a collision between a newspaper truck of the defendant, in which the plaintiff was riding as a helper, and a squad car of the Chicago city police), which occurred on said date at the intersection of Wood and Ohio streets in the city of Chicago, Illinois. A trial was had before the court and a jury. The jury returned a verdict finding the defendant guilty and assessing plaintiff's damages at the sum of $27,500.

Judgment was entered thereon, and from this judgment the appeal is taken by the defendant.

The plaintiff alleges in his amended complaint that he was 15 years of age when the accident happened. For a long time before the accident the newspaper company permitted its drivers to take minors for rides on the newspaper trucks, and permitted these minors to get on the trucks at the loading platform, and that "these minors, including the minor plaintiff, became and were the individual helpers of the various drivers aforesaid, in the matter of the delivery and sale of the newspapers aforesaid."

Paragraph 5 of the complaint charged that the driver, "with actual or constructive knowledge of the corporate defendant, . . ." invited and requested the minor plaintiff to ride on the truck and assist the said driver in the delivery and circulation of the newspapers.

Paragraph 6 of the complaint charged that on the day of the accident "the minor plaintiff was riding in one of the newspaper trucks aforesaid, which was then and there being driven by Frank Antker, at the invitation and request of Frank Antker, with the knowledge, actual or constructive, of the corporate defendant upon the business of the defendant," and the complaint further charged that there was negligence by reason of which the plaintiff was injured and, consequently, suffered damages.

After the trial began, the defendant, by leave of court, filed an amended answer. This amended answer denied the various charges of the plaintiff in his declaration. With the amended answer the defendant also filed two special or separate defenses. In the separate defenses the defendant alleged that it was operating under and bound by the provisions of the workmen's compensation law of Illinois, and admitted the following: Frank Antker (the defendant truck

driver) was, at the time of the happening of the accident and injury, an employe of the defendant engaged in the delivery and distribution of newspapers for the defendant; the minor plaintiff ". . . was employed by the said Frank Antker for hire to assist him, the said Frank Antker, in and about the work of distributing and delivering newspapers for the defendant, and was at the time of the accident riding on the truck and assisting the said Frank Antker in the work of distributing and delivering newspapers; . . . that at the time of the accident and injury to the minor plaintiff, it was the custom and practice among drivers of the defendant to employ persons to ride on the trucks and assist them in the delivery and distribution of newspapers for the defendant, and that said custom and practice was known to and acquiesced in by the defendant."

In both of these special defenses it was alleged that the minor plaintiff was operating under and bound by the provisions of the Workmen's Compensation Act of Illinois, and therefore had no right to this common law action. It was also alleged by the defendant in its special defenses that the boy was employed by the driver to assist him in the work of delivering and distributing newspapers, and that the plaintiff was bound by the provisions of the Workmen's Compensation Act.

To these special defenses the plaintiff filed a reply in which the plaintiff stated that the plaintiff ought not to be barred from having his common law action, because at the time of the accident the plaintiff was not working or bound by the Workmen's Compensation Act.

The facts are, from the evidence heard by the court and jury, that on August 22, 1936, the defendant Times Publishing Corporation, printed the Daily Times, a city newspaper, at its plant on Wacker drive just west

of Wells street, in the city of Chicago. It distributed its papers to various sales points of the city of Chicago by means of motor trucks operated by drivers in its employ. Frank Antker, who was originally made codefendant in this suit, was one of defendant's drivers engaged in the distribution of newspapers for it on the near northwest side of the city of Chicago. He employed the minor plaintiff to help him in the delivery and distribution of newspapers, and paid him therefor $3 per week and furnished him with one meal per day. This was along about the middle of August, 1936. The plaintiff at this time was a boy about 15 years of age. His duties were to help load the papers for Antker's route, then ride with Antker, count the papers for the newsstands, or different delivery points on the route (many of the deliveries were made to stores), pick up and return the papers from the stands and stores, bind them in bundles, and help load them on and off the truck. Antker drove a small Daily Times Ford truck while the plaintiff was working with him. Antker had 80 stops on his regular route and 100 stops for the Sunday edition delivered on Saturday nights. The plaintiff worked as Antker's helper daily for 10 days until the accident in question occurred. Antker paid the plaintiff $3 per week for 1 week, bought him a meal a day, and gave the boy's mother the balance of his time.

On August 22, 1936, Antker and the plaintiff were at work on their route and were driving north on Wood street, a north and south street, in Chicago. A stop on the route had been made at Wood street and Grand avenue. Grand avenue was one block south of Ohio street. The next stop was at Wood and Erie, with Erie being one block north of Ohio. At the intersection of Wood and Ohio streets their truck collided with a squad car traveling west on Ohio street. The squad car was on its way in answer to a riot call at Chicago avenue and Leavitt street.

All the witnesses who testified were witnesses for the plaintiff. The only testimony offered by the defendant was a stipulation or admission of record that the defendant was engaged in an enterprise to which the provisions of the Workmen's Compensation Act automatically applied, and the plaintiff's minor did not, nor did any of his legal representatives at any time within 6 months after the happening of the accident in question, file with the industrial commission a rejection of his right to the benefits under the Workmen's Compensation Act.

One of the questions called to the attention of the court by the attorney for the defendant is that the trial court erred in refusing to instruct the jury to find the defendant not guilty at the close of all the evidence, as requested by the defendant, for the reason that the undisputed evidence in the case shows that at the time of the happening of the accident and the injuries resulting to the plaintiff, the plaintiff and the defendant were operating under and bound by the provisions of the Workmen's Compensation Act of the State of Illinois, and that the plaintiff's right of recovery, if any, against the defendant was under the Workmen's Compensation Act and not at common law.

The theory upon which the defendant questions the action of the trial court is that at the time of the happening of the accident in question the plaintiff was an employe of the defendant under an implied contract of hire, and that his injury arose out of and in the course of his employment, and therefore, his remedy, if any, against the defendant was under the Workmen's Compensation Act of Illinois, and not at common law.

Chapter 48, par. 142, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 143.20] of this act, as amended, provides in part as follows:

"Second—Every person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is out-

side of the State of Illinois where the contract of hire
is made within the State of Illinois, and including
aliens, and minors who, for the purpose of this Act
shall be considered the same and have the same power
to contract, receive payments and give quittances
therefor as adult employees. . . ." And this statute
provides in par. 144, that

"(i)—In case the injured employee is under sixteen
years of age at the time of the accident and is illegally
employed, the amount of compensation payable under
paragraphs (a), (b), (c), (d) and (e) of this section
shall be increased fifty percentum." So, in the dis-
cussion of the question called to our attention by the
defendant, it is necessary to consider the facts as they
appear in the record and to which we have referred.

It is to be noted that this boy had been employed only
10 days when the accident occurred. So far as the
record discloses it does not appear that any of the gov-
erning agencies of the defendant acquiesced in the em-
ployment of this minor, and in order to bind the plain-
tiff by the provisions of the Workmen's Compensation
Act this must appear from the facts and circumstances.
It will be necessary to refer to some of the authorities
cited by the defendant. The case on which the defend-
ant relies is entitled *Larson v. Independent School Dis-*
*trict No. 11J*, 53 Idaho 49, 22 P. (2d) 299, in which
Larson was employed under a written contract to do
janitor work at $70 a month, and his wife assisted him
in doing the work and was killed by falling or slipping
and striking her head on a mop bucket. The question
there was whether or not she was an employe of the
school board. In passing upon the question the Su-
preme Court said: ". . . where one is requested by an
employe to assist in doing such employe's work in the
furtherance of the business of the master, and such
assistant does such work with the knowledge and
acquiescence of the employer, such assistant thereby

becomes in effect an employe. . . ." This being the rule so far as that authority is considered, it would have a particular bearing upon the question in the instant case.

If knowledge as well as acquiescence was necessary in the employment of the boy, then the record as to fixing his employment is silent.

Then, again, we find that in passing upon the facts involved in the case of *White v. San Antonio Waterworks Co.* (Tex. Civ. App.), 29 S. W. 252, the Supreme Court held that there was evidence from which the jury found that a man named Wilson was an employe of the Waterworks Company, and in doing so used this language: "We are of the opinion that there was evidence from which the jury might have found that Wilson was an employe of the Waterworks Company. . . ."

Now the jury in the instant case did find by its verdict that the plaintiff's minor was not an employe of the defendant company, and therefore could maintain his common law action.

In the case of *Purtell v. Philadelphia & Reading Coal & Iron Co.,* 256 Ill. 110, cited by defendant's counsel, the court in its opinion said:

"The evidence in this record shows plainly that for many years there has been a custom, which must have been well known to those in charge of appellant's yard, for the car pushers and others, in their work of handling coal, to employ a boy as a water carrier, who kept them supplied with water, and who sometimes, at the request of such employees, was expected to go for beer." And the defendant suggests to this court that the plain meaning of the *Purtell* case is that an employe of an employe on the master's premises for a purpose connected with the master's business also must be treated as an employe.

The answer to this suggestion is that there is nothing in the record to show there was a custom which would

have any particular significance in disposing of the facts in this case. The boy certainly did not know of any custom, and there is no evidence that the defend-ant was advised of a custom, of employes hiring men to help them in carrying on the business of the defendant. As we have already indicated, the whole question depends upon the acquiescence of the employer in the employment by one of its agents of the person who was injured, as to whether it came within the provisions of the statute.

In *Johnson v. Wisconsin Lumber & Supply Co.*, 203 Wis. 304, 234 N. W. 506, it appears from the statement of facts that a truck driver who was involved in an accident before the accident to the plaintiff occurred, telephoned his employer about the situation and was told to get help, and he replied that he already had help. Therefore, the person who was assisting was regarded as an employe, because his assistance was with the knowledge and consent of the employer. The truck driver engaged the plaintiff to assist him in an effort to release the truck, which was stalled in a hole and finally removed by the tractor driven by the plaintiff, who was injured.

From an examination of the authorities it is clear that there must be evidence which would establish that the person seeking to recover in an employment case was in the employment of the master, with the master's knowledge, acquiescence and consent, and in case of injury the person injured would be subject to the workmen's compensation law.

We considered the facts in the record, and are of the opinion there is nothing which would bring this boy within the provisions of the act; it was not necessary for him to give notice within 6 months after his injury that he did not care to take advantage of the workmen's compensation law.

The question as to the right of this minor to institute suit by his father and next friend is questioned because of the provision of the statute that has been called to our attention, par. 143, sec. 6, ch. 48, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 143.21] of the workmen's compensation law, which provides in part:

"Provided, further, that any illegally employed minor or his legal representatives shall, except as hereinafter provided, have the right, within six months after the time of injury or death, to file with the commission a rejection of his right to the benefits under this Act, in which case such illegally employed minor or his legal representatives shall have the right to pursue his or their common law or statutory remedies to recover damages for such injury or death; and provided, further, that no payment of compensation under this Act shall be made to an illegally employed minor or his legal representatives, unless such payment has first been approved by the commission or any member thereof, and if such payment has been so approved such payment shall be a bar to a subsequent rejection of the provisions of this Act."

No payment has been made to this plaintiff under the provisions of this act, so that question is not involved. The question which concerns us is whether the plaintiff is barred by reason of failure to file with the commission a rejection of his rights to the benefits under this act, in case it appears from the record that he was an illegally employed minor.

The thought that seems to be foremost in the minds of the court is whether or not the plaintiff is bound by the provisions of this act. The defendant's position is that the plaintiff is subject to the provisions of the compensation law, and in order to maintain the instant suit it was necessary for him to file a rejection, as required by the statute. The plaintiff, however, in order to be bound by its provisions must have knowl-

edge that he is subject to the provisions that require him to file a rejection.

On that phase of the case the record is silent. The record does show that the boy had been employed on this truck for a period of 10 days to deliver the newspapers, when this accident occurred in which he was injured. The boy being a minor and not having a legal representative it certainly would seem but reasonable to assume from the facts that he did not have knowledge of the conditions under which he was laboring, and not having that knowledge, as required by the statute covering employment of the character in which he was engaged, he was in a position to maintain his action for the recovery of damages caused by the wilful conduct of the driver of the truck.

Another theory we have in mind is that the defendant at no time tendered or offered to the plaintiff the amount due as provided by the Workmen's Compensation Act, and the import of the statute is that the employe is to be paid promptly if he is within the provisions of the act. This attitude of the defendant would indicate, at least, that it did not consider its liability as being one imposed by the Workmen's Compensation Act.

The liability of the defendant rests largely upon whether at the invitation of the driver of defendant's truck the plaintiff in accepting this invitation did so to render assistance to the driver in the delivery of newspapers for the defendant upon the terms suggested in this opinion.

An interesting case which we believe would enlighten us in the discussion as to liability of the defendant is that of *Radatz v. Tribune Co.*, 293 Ill. App. 315. In this case the driver of the truck was confused about the location of the place where he was to go as directed by his master, and seeing three boys in front of the school, inquired of them where Loomis street was, and told

them that he wanted to go to 31st and Morgan streets. In response to this question one of the boys replied: "Let me get on and we will show you." Two of the boys got on the seat, while one stood on the running board of the truck. While in the course of the driver's journey it appears that the plaintiff together with other boys, was on the tailgate of his truck when the driver backed up against a lamp post at the northwest corner of the intersection of Farrell and Lyman streets in Chicago, and was injured.

The court in discussing the question of liability of the defendant for the injury of the boy points to the fact that the driver had received orders from his superior not to allow any person on the truck or wagons unless they were in the employ of the defendant company, and it was upon this question that the court said: "The defendant vigorously contends that the instruction should have been given because it says there was no evidence in the record tending to show, or from which it could reasonably be found, that the driver in inviting plaintiff to ride on the truck was acting within the scope of his employment and within the scope of defendant's business so as to make defendant liable for negligently injuring plaintiff. While a large number of cases from different jurisdictions are cited, defendant contends that the case falls squarely within the rule announced by this court in *Scott v. Peabody Coal Co.*, 153 Ill. App. 103; *Collins v. City of Chicago*, 187 Ill. App. 30; and *Collins v. Noll Baking & Ice Cream Co.*, 226 Ill. App. 124. Defendant says the rule to be deduced from these cases is, 'If a servant employed by a master in the driving of a . . . wagon has been instructed not to permit boys to ride with him on such wagon and violates such instruction and the boy riding upon such wagon is injured, the master is not liable.' There are, we think, two answers to this contention. In the first place, each of the three cases cited and

relied on are clearly distinguishable from the instant case in that the boys who were invited to ride upon the vehicle and did so were riding simply for their own pleasure, while in this case the purpose of the boys in accepting the invitation to ride upon the truck was at least partly to render assistance to the driver in the transaction of the business he was employed to do and was doing for the defendant corporation. In the second place, we think the doctrines announced in these Appellate Court opinions have been very much modified by rules of law subsequently announced by the Supreme Court, particularly in the case of *Hayes v. Sampsell,* 274 Ill. 258. In that case it appeared that Hayes, a boy 10 years of age, was acquainted with the motorman operating one of defendant's street cars. The motorman, seeing the lad on the street in the down town district, invited him to ride home on the street car. Before the termination of the journey the boy was injured through the negligent starting of the car by the servants of defendant. Plaintiff testified that he did not pay any fare and that he did not intend to pay any. There was a conductor in charge of the street car, and it was the duty of the motorman to signal the conductor in case there was a passenger on the platform, where the boy stood with him. The motorman did not so signal. Upon suit by the plaintiff it was contended for defendant that the plaintiff was not a passenger but at most a mere licensee, and that defendant owed no duty except not to wantonly injure him. On the other hand, the plaintiff contended that although not a passenger in the strict sense of the term, he was rightfully on the car and that the defendant owed to him the duty of reasonable care. . . . In reply to the contention of the defendant that the boy was a trespasser or mere licensee and that no duty existed, therefore, except to refrain from wilfully or wantonly injuring him, the court said: 'Those cases,

however, apply to adults and are not meant to apply to the case of a child of immature age. The question here is not as to the duty of plaintiff in error toward adults, but is, what is that duty in respect to a child of immature years? An adult certainly has no right to enter a car, such as that boarded by defendant in error, except as a passenger. If he should do so upon the invitation of one in charge of the car and without any expectation of paying his fare he will be bound to know that such an act is improper and will be held to be in collusion with the one in charge of the car to defraud the street car company. A child who has not yet arrived at the age of discretion and who might innocently accept such an invitation is not held to such a strict accountability.' '' And the court in further discussing the cases cited as authority, said this in the closing words of its opinion:

''Without discussing in detail all the cases cited in the briefs, which would extend this opinion unduly, we think the principle of law announced in the above case is controlling and reasonable. Notwithstanding the direction given by defendant to the driver not to let any persons other than employees ride on the truck, it appears that while he was in the course of his employment and for the purpose of assisting him in carrying out the duties of that employment, he invited these boys to ride upon the truck. He disobeyed his instructions but he disobeyed while in the course of his employment and about the master's business.''

The suggestion made by this court applies with equal force to the facts as they appear in the record before us. Here the boy was invited by a driver of one of the trucks of the defendant to aid and assist him in the delivery of newspapers printed by the defendant, and in order to carry on the business for which these newspapers were printed. The boy was induced to and did

help the driver deliver papers at the location where this work was carried on by the defendant.

The collision in question took place between the defendant's truck and a police squad car, which was westbound and giving audible signal by using a siren. in response to a riot call. The newspaper truck, whose driver had 80 stops to make, was northbound and the driver was operating the truck at a speed estimated to be between 60 and 65 miles an hour. So, the question of the operation of the automobile truck was for the jury to consider, and from the verdict the jury found that the driver was negligent in attempting to pass in front of the approaching squad car, which under the statute had the right of way. The jury was instructed as to the provision of the statute governing the operation of the automobile at the time. Chapter 95½, par. 169, art. IX, sec. 72(a), Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 85.201], provides:

"(a) Upon the immediate approach of an authorized emergency vehicle, when the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer."

The question of fact as to whether the driver of the newspaper truck was guilty of wilful and wanton conduct in the operation of the automobile truck was for the jury, and we believe the court did not err in refusing to peremptorily instruct the jury to find the defendant not guilty as to the second count of the amended complaint, which charges wilful and wanton conduct in the operation of the automobile truck.

A number of instructions of the court, which were given at the close of the hearing, are complained of,

and we must bear in mind that only evidence offered by the plaintiff was heard by the jury, the defendant not offering any, except the stipulation we have mentioned regarding proof, but no fact evidence was offered by the defendant, or heard, and the instruction complained of was one offered by the defendant, but refused. This instruction is as follows:

"If you believe from the evidence in this case that at the time of the happening of the accident and injury in question to the plaintiff, Henry Kijowski, he was employed for hire by the said Frank Antker to assist him, the said Frank Antker, in the delivery and distribution of newspapers for the defendant; and if you further believe that at the time of the accident he was riding on the truck in question and assisting the said Frank Antker in and about the distribution of newspapers for the defendant, and that at said time and prior thereto it had been the custom of the drivers of the defendant to employ boys to ride with them upon the trucks of the defendant and assist them, the drivers, in and about the distribution of newspapers for the defendant; and if you further believe from the evidence that the defendant knew of said custom and acquiesced in same, then and in such case the plaintiff, Henry Kijowski, is not entitled to recover."

It would have been error to give this instruction to the jury for one of the necessary elements in this case is that the defendant knew of the custom and acquiesced in the same. The defendant not having offered any evidence, and none being in the record from which the jury could determine the question as to whether there was a custom and as to whether the defendant acquiesced in the same, it would be, as we have stated, error to advise the jury of said fact.

Finally, the question is before this court as to whether the verdict of the jury for $27,500 and the judgment entered thereon is excessive.

This young lad is permanently handicapped by the loss of a leg, which was amputated as the result of the accident, and having considered the reasons offered by the defendant we are not satisfied with counsel's argument that the verdict is excessive. The contention that the court should take into consideration the economic condition of the times, and that they are much worse now than they were in the year 1922 or 1925, and that defendant companies, although not using the word ''defendant,'' are less able to pay damages, is not very convincing. We believe the verdict of the jury is not excessive. Therefore the judgment is affirmed.

*Judgment affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.