Joseph Oran, Minor, by Moe Oran, Father and Next Friend, Appellant, v. Kraft-Phenix Cheese Corporation, Appellee.

Gen. No. 42,633.

Opinion filed December 19, 1944.
Released for publication January 4, 1945.

IRVING N. STENN and KROHN & MACDONALD, all of Chicago, for appellant; STUART B. KROHN and IAN P. MACDONALD, both of Chicago, of counsel.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee; WILLIAM H. SYMMES, DAVID JACKER and JOHN M. O'CONNOR, JR., all of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

While riding on a bicycle along Pulaski road in Chicago, plaintiff, a minor, was crowded against an automobile parked along the curb by a truck of the Kraft-Phenix Cheese Corporation and severely injured. He brought suit against the cheese company, the driver of its truck, Walter T. Peterson, and Agnes Geiger, the owner of the parked car, who was dismissed from the case before trial. Peterson was dismissed at the close of all the evidence and before the cause was submitted to the jury. At the close of all the evidence the remaining defendant moved for a peremptory instruction, upon which the court reserved its ruling. The cause was then submitted to the jury, which returned a verdict in plaintiff's favor in the sum of $1,200. Thereafter the court denied defendant's written motion for a new trial, granted its motion for a judgment notwithstanding the verdict, and entered judgment in favor of defendant, from which plaintiff appeals.

The accident occurred about 5:30 in the afternoon on December 13, 1939, after darkness had set in.

Plaintiff was then 15 years of age, lacking one day of attaining his 16th birthday, and a student at Roosevelt high school. He was employed after school and on Saturdays and Sundays in a pharmacy called "Lessing Prescriptions," doing clerical work and delivering packages. On the day of the accident he had to deliver a package to a customer on North Kolmar avenue and for that purpose used a bicycle which had a large red reflector, two or three inches in diameter, on the back fender. The package he was delivering was a large bundle about 18 inches long and 12 inches high, but weighing only about three pounds, containing two boxes of Kotex, a box of Kleenex, some cough medicine and tablets. There was no basket on the bicycle, and plaintiff held the package in his left hand and steered the bicycle with his right hand. He left the store at 3627 West Lawrence avenue, rode west on that street to Pulaski road and north along the latter highway, keeping as close to the right hand curb as possible and swinging out whenever necessary to pass parked cars. There are street car tracks on Pulaski road, with a granite-block pavement approximately 15 feet from the right or northbound rail to the curb. At the time of the occurrence plaintiff was traveling in a northerly direction, about five to six miles an hour. He states that he first became aware of the vehicle that ultimately crowded him against a parked automobile when he noticed the noise behind him of an approaching truck which was passing a northbound street car to the right and going about 30 miles an hour. As the truck passed the car it swung close to him and caused him to put up his left hand to protect himself. He wore a heavy overcoat with a strap on the left sleeve, two or three inches wide, extending around the sleeve. As the truck swung around to the right of the street car plaintiff was riding about two feet from the curb, and according to his testimony, in putting up his left hand to protect himself from the crowding truck his

arm slid along the smooth side of the vehicle and the sleeve strap caught on a protruding door handle close to the center of the truck, consisting of a metal bar with a point turned toward the front about 4¾ feet from the ground. Because of the speed of the truck and the fact that his sleeve was caught in the handle, his arm was wrenched and pulled forward so that he could not disengage it or take his right hand off the handlebar of the bicycle. The truck pulled the bicycle along in this manner for over a block until it was crowded between the truck and Agnes Geiger's car parked at the curb. Plaintiff's bicycle had a coaster brake, and after he was caught and pulled forward by the truck he stood on the pedals with his left hand holding the package, his arm caught in the truck handle so that he could not free himself. As the bicycle struck the Geiger car it flew in the air and plaintiff was thrown to the ground, sustaining a fractured clavicle, a fracture of the costal arch of the chest, a severe cut on his head and various bruises. He was hospitalized for 11 days, during which splints were applied and left in position for about six weeks, and thereafter for several months he suffered considerable pain. His medical and hospital bills totaled $275.95.

Defendant insists that plaintiff was "hooking a ride" on the truck immediately preceding the accident to avoid the physical exertion of pedaling his bicycle, and to sustain its theory and in an endeavor to rebut plaintiff's testimony it produced Russell L. Cox as a witness. Cox was driving his automobile north on Pulaski road between Lawrence and Foster avenues, with the Kraft truck and a street car ahead of him. He stated that plaintiff had been holding on to the truck from Lawrence avenue. Somewhere north of that street "the truck made a bid to pass the street car. At that time this boy on the bicycle was hooking a ride on the right side of the Kraft truck. It all

happened very quickly. As the truck straightened out there was a parked automobile at the curb, in between the automobile parked at the curb was sufficient clearance for this truck to clear through. The boy hanging on to the truck did not see this in time. He let go of the truck and struck a parked car with his bicycle, his bicycle and him on it. It threw him rather severely and at the time I came to pick him up he was badly hurt and he was 35 to 40 feet ahead of the parked car and off his bicycle, thrown to the ground. I saw there were some scattered, broken packages around the bicycle where the boy was.'' Cox admitted that he did not see plaintiff at any time until he (Cox) was within 50 feet of the truck. On cross-examination he testified as follows: ''Q. You could not see whether he had hold of the truck, holding on with his hand, from the distance where you were in the night time, or whether his sleeve was caught on something on the truck? A. No, I couldn't see that. Q. You couldn't see that? A. No. Q. And when this thing occurred, or what you are telling about, there was an automobile between you and the truck too, wasn't there? A. Correct.''

The only other witness who saw any part of the occurrence was Erwin Feigenbaum, who states that he was operating the northbound street car about 20 miles an hour along Pulaski road between Argyle and Foster avenues when defendant's truck passed to his right. When the truck had proceeded to about 15 feet in front of the car Feigenbaum heard a noise, looked and saw a bicycle ''up in the air.'' The truck kept on going to Foster avenue, ''where I overtook him and had a conversation with the driver.''

Peterson, the driver of the truck, admitted on his own direct examination that while he was passing the northbound street car he heard a noise of some kind which he attributed to running over a piece of metal, tin or iron, and ''I first thought maybe I had a puncture or something, but nothing happened, the truck

continued on and I went on to Foster and I began thinking I should examine the truck.'' It was at Foster avenue that Feigenbaum talked to Peterson and told him that his truck had hit a boy on a bicycle.

Defendant seeks to justify the judgment in its favor notwithstanding the verdict for reasons which we shall hereinafter discuss, but it contends that if the trial court erred in granting the judgment it nevertheless should have allowed defendant's motion for a new trial in pursuance of its written motion under rule 22 of the Supreme Court, wherein defendant set forth some 16 separate grounds for a new trial. The principal ground urged is that the verdict of the jury was against the manifest weight of the evidence. As heretofore stated, defendant predicated part of its defense upon the theory that plaintiff was ''hooking a ride.'' This theory, supported only by Cox's testimony, was in direct conflict with the evidence adduced by plaintiff, supported by the probability of the truth of the latter's statement that he was carrying the bundle in his left hand, steering the bicycle with his right and would therefore have been unable to hold on to the handle of the truck in an endeavor to ''steal a ride,'' as defendant contends. In any event, since the evidence was conflicting it was the duty of the jury to determine the facts, and we would not be justified in substituting our judgment for its. There is sufficient evidence to support the verdict.

Defendant's principal contention, that the verdict was contrary to the manifest weight of the evidence, is lodged in the argument that Peterson, defendant's driver, did not see plaintiff and therefore was not negligent. However, it clearly appears from the record that defendant's truck overtook plaintiff as he was riding on his bicycle, which had a red reflector on the rear fender, and under the well-established rule of law a person is charged with the duty of looking and seeing things that are obviously visible. Moreover, it

appears from Peterson's own testimony that he continued on to Foster avenue, turned the corner and was examining his truck to see whether any damage had been done to it when Feigenbaum apprised him of the accident. He evidently suspected that he had struck something when he heard the sound "like I was going over a piece of tin or metal," and the jury may well have concluded that he saw plaintiff on his bicycle; that he knew defendant's truck "ran into and struck and collided with plaintiff," as charged in the complaint; but, nevertheless, continued on his way until he turned the corner at Foster avenue to examine any possible damage to his truck.

In support of its contention that the court should have granted defendant a new trial it is further urged that the dismissal of Peterson as a codefendant was highly prejudicial and constituted reversible error, because of the prior admission into evidence, over defendant's objection, of Feigenbaum's conversation with Peterson, in which Feigenbaum told him that he had hit a boy on a bicycle, and Peterson's purported reply that he thought he had run over a piece of tin but did not stop and had no intention of going back even after he came to a stop at Foster avenue; that although such evidence would have been admissible against Peterson, it was in any event not competent as to the cheese company bcause it was not part of the *res gestae;* and counsel say that the dismissal of Peterson just before the case was argued, left the prejudicial testimony standing solely against Peterson's employer, the only remaining defendant, and tended to arouse the jury's passion against it. We find, however, that the cheese company, when making its defense, had put Peterson on the stand and elicited from him on direct examination the same conversation which had previously been brought out during plaintiff's case in chief. He then repeated the testimony in substance on cross-examination by plaintiff's attorneys. Having volun-

tarily adduced this evidence as part of the record, defendant is precluded from urging it as error on appeal.

With respect to the entry of judgment for defendant, notwithstanding the verdict, the record discloses the following state of the pleadings. Defendant's answer set up the affirmative defense that plaintiff and his employer, and defendant and its employee were all subject to and operating under the Workmen's Compensation Act of Illinois (Ill. Rev. Stat. 1943, ch. 48, par. 138 *et seq.* [Jones Ill. Stats. Ann. 143.17 *et seq.*]), and that by section 29 of that act any cause of action which plaintiff might have had because of the accident was transferred to his employer. To that answer plaintiff filed a reply in which he stated that he was a minor illegally employed, and therefore had a right to bring an action at law. He did not, however, deny that all the parties were operating under the Act. Thereafter, without notice to plaintiff and without leave of court, defendant filed a reply stating that plaintiff did not, within six months of the date of the accident, file with the Industrial Commission of Illinois, a rejection of his rights to the benefits under the Compensation Act, as provided in section 6 thereof as follows: "No common law or statutory right to recover damages for injury or death sustained by any employe while engaged in the line of his duty as such employe, other than the compensation herein provided, shall be available to any employe who is covered by the provisions of this act, . . . . Provided, further, that any illegally employed minor or his legal representatives shall, except as hereinafter provided, have the right, within six months after the time of injury or death, to file with the commission a rejection of his right to the benefits under this Act, in which case such illegally employed minor or his legal representatives shall have the right to pursue his or their common law or statutory remedies to recover damages for such injury or death, . . . ." After the court

had sustained defendant's motion for judgment notwithstanding the verdict, plaintiff sought to amend his reply to the answer so as to deny that the plaintiff and his employer were bound by the Compensation Act, but the court refused plaintiff's request. The issues had then been settled by the pleadings for about three weeks when plaintiff sought for the first time to inject into the case the issue of fact whether all the parties came within the Compensation Act.

With respect to these various pleadings we hold that plaintiff, by failing to deny that the parties were under the Act, admitted that to be the fact (Practice Act, sec. 40, subsec. 2, Ill. Rev. Stat. 1943, ch. 110, par. 164 (2) [Jones Ill. Stats. Ann. 104.040, subsec. (2)]). This being admitted, there was consequently no necessity to offer any proof on the subject (*Pierce v. Reeve,* 306 Ill. App. 400; *City of Springfield v. Kable,* 306 Ill. App. 616). We also hold that the granting or refusing of leave to amend is within the jurisdiction of the trial court, and a judgment will not be reversed for a refusal to allow an amendment unless there has been a manifest abuse of discretion (*County of Winnebago v. Cannell,* 376 Ill. 277; *McGlaughlin v. Pickerel,* 381 Ill. 574). This is especially true after the evidence has been closed, as it was in the case at bar. *McGlaughlin v. Pickerel, supra; Stewart v. McIntosh,* 316 Ill. App. 212; *Whitten v. John Hancock Mut. Life Ins. Co. of Boston, Mass.,* 281 Ill. App. 539.

There remains for consideration the principal and more difficult question whether the court properly entered judgment notwithstanding the verdict because plaintiff, an illegally employed minor, failed within six months after the injury to file with the commission a rejection of his right to the benefits of the Act as a condition precedent to the exercise of his common-law right to recover damages for his injuries. Cases cited by the respective parties, with one exception (*Kijow-*

*ski v. Times Publishing Corp.,* 298 Ill. App. 236, aff'd upon review by the Supreme Court in 372 Ill. 311), involve the public policy of this state as expressed by the courts in safeguarding the rights of minors under general statutes as distinguished from specific legislation. In *Walgreen Co. v. Industrial Commission,* 323 Ill. 194, decided prior to the enactment of section 6, the question arose as to whether a minor was bound by the statutory provision of section 24 of the Workmen's Compensation Act which prescribes that no proceedings for compensation under the act shall be maintained unless made within six months after the accident. It was there pointed out that although section 24 is general in its terms, nevertheless such statutes are frequently construed to contain exceptions when considered in connection with well known rules of law, upon the theory that their enactment was effected with full recognition of rules of law which had become well known and established; and in deciding that the time limitations provided by section 24 do not run against the rights of a minor so long as he is without a guardian, the court made the following observation: ''From time immemorial the status of a minor of tender years has been recognized in law to be different from that of one of more mature years, and in *McDonald v. City of Spring Valley,* 285 Ill. 52 (a suit brought by a minor by her next friend in trespass on the case against the city of Spring Valley), it was held that the statute requiring written notice six months after an injury by any person intending to sue a city did not apply to a child seven years old, who was physically and mentally incompetent to give such notice, and that the act, though general in its terms and containing no specific exception, must be construed as having been passed with due regard to the established rules of law for the protection of incompetent persons. In *Maskaliunas v. Chicago and*

*Western Indiana Railroad Co.,* 318 Ill. 142 (a suit for personal injuries), it was held that the statute making it a misdemeanor to climb upon a railroad car without permission had no application to the appellee, who was under ten years of age, and that, notwithstanding the statute was general in its terms, it must be construed in connection with a statute declaring a child under the age of ten *doli incapax.* From these decisions the conclusion must be drawn that it is the public policy of this State that courts should guard carefully the rights of minors and that a minor should not be precluded from enforcing his rights unless clearly debarred from so doing by some statute or constitutional provision.''

In *McDonald v. City of Spring Valley,* 285 Ill. 52, the court held that the statute requiring written notice within six months from the date of injury before suit against a municipality for personal injury (Cities and Villages Act, Ill. Rev. Stat. 1943, ch. 24, par. 1–11 *et seq.* [Jones Ill. Stats. Ann. 21.1121 *et seq.*]) does not apply to a minor, but only to those who are mentally and physically capable of comprehending and complying with its terms. The court said it was aware of the fact that in a number of other jurisdictions a strict construction has been given to similar statutes and that it has been held in those states that it is a matter for the legislature to determine whether there should be any exceptions to such legislation; ''but in the State of New York,'' said the court, ''where there is a similar statute, the New York Court of Appeals held that where an infant five years of age was injured by the alleged negligence of a village, its right of action was not barred because it did not file the notice required within the time prescribed by the statute, under the rule that the law does not seek to compel one to do that which he cannot possibly perform, and that the failure of a father or mother to file the notice is not chargeable to the infant. (*Murphy v. Village of Ft.*

*Edward,* 213 N. Y. 397.) In the State of Washington a similar statute has been construed not to include cases where the person injured was rendered physically and mentally incapable of complying with the statute in the time required, by reason of the extent of his injuries. (*Born v. City of Spokane,* 27 Wash. 719; *Ehrhardt v. City of Seattle,* 33 id. 664.)'' In stating its conclusions in the *McDonald* case the Supreme Court said that ''It would be unreasonable to so construe this statute as to make it appear that the legislature intended in these few cases to require that to be done which is utterly impossible of performance. It cannot be controverted that a minor is incapable of appointing an agent or an attorney, and it cannot be successfully contended that the statute can be complied with by the filing of the required notice by the father, mother or some friend of the child as next friend. While the parent of a minor is its natural guardian he cannot be said to be the agent or attorney for the child. A child with a meritorious cause of action but incapable of initiating any proceeding for its enforcement will not be left to the whim or mercy of some self-constituted next friend to enforce its rights.''

We are not unmindful of the fact that the foregoing decisions deal with statutes that are general in their terms; nevertheless they express the public policy of the state and cannot be disregarded in construing section 6 which is specific in its terms. So far as we have been able to ascertain, *Kijowski v. Times Publishing Corp.,* 298 Ill. App. 236, is the only instance in which the right of a minor to institute suit by his father and next friend because of the provision of section 6, has received the consideration of any reviewing court in this state. The court there said that ''The question which concerns us is whether the plaintiff is barred by reason of failure to file with the commission a rejection of his rights to the benefits under this act, in case it appears from the record that he was an il-

legally employed minor. The thought that seems to be foremost in the minds of the court is whether or not the plaintiff is bound by the provisions of this act. The defendant's position is that the plaintiff is subject to the provisions of the compensation law, and in order to maintain the instant suit it was necessary for him to file a rejection, as required by the statute. The plaintiff, however, in order to be bound by its provisions must have knowledge that he is subject to the provisions that require him to file a rejection. On that phase of the case the record is silent. . . . The boy being a minor and not having a legal representative it certainly would seem but reasonable to assume from the facts that he did not have knowledge of the conditions under which he was laboring, and not having that knowledge, as required by the statute covering employment of the character in which he was engaged, he was in a position to maintain his action for the recovery of damages caused by the wilful conduct of the driver of the truck.'' The *Kijowski* case later came before the Supreme Court on leave to appeal (372 Ill. 311). The judgment of the Appellate Court was affirmed without passing upon the question here under consideration, the court finding that the injured boy who was hired by the truck driver to assist in making deliveries for a newspaper publishing company was not an employee of the latter.

Both parties call our attention to an article appearing in Volume 20, No. 3 (June 1942) *Chicago-Kent Law Review* by George W. Angerstein, who has written many treatises on the law of industrial compensation. Begining at page 202, the author discusses the question whether a minor would have to reject within six months under section 6 of the act. He cites the *Walgreen, McDonald, Kijowski* and other decisions and concludes that ''There certainly are no clear statutory or constitutional time limitations against such minor, and in their absence and in view of the decisions of the courts

[the Illinois cases cited and *Decker v. Pouvailsmith Corp.*, 233 N.Y.S. 407], it very probably has to be assumed that, at least, until the appointment of a guardian there is no limit of time except the termination of the minor's infancy as regards, (1) his right to bring a claim for benefits under the Compensation Act, (2) his right to file a rejection with the Industrial Commission of his right to benefits under the Act so as to proceed at common law, or (3) his right to sue at common law for damages due to personal injury."

In *Waechter v. Industrial Commission*, 367 Ill. 256 (opinion filed October 15, 1937), the court held that the order there entered "did violence to the rights of the minor son who was not represented at any stage of the proceeding by a guardian or next friend. It is well settled that a minor cannot commence or engage in a legal proceeding in his own name. (*Walgreen Co. v. Industrial Com.*, 323 Ill. 194.) He can not appear by an attorney but must appear, if at all, by a representative, such as general guardian, guardian *ad litem* or next friend. (*Hasterlik v. Hasterlik*, 316 Ill. 72; 31 Corpus Juris, p. 1148.)"

From a consideration of the foregoing authorities we have reached the conclusion that in view of the clearly expressed public policy of the state, there can be no clear statutory time limitation against a minor under the provisions of section 6, until a guardian has been appointed. Plaintiff had no legal guardian and under the law he cannot be presumed to have been aware of the provisions of the statute. It was, therefore, legally impossible for him to have filed a rejection himself. To charge him with the responsibility of doing so, even though the statute specifically provides that he is required to file a rejection as a condition precedent to enforcing his common-law rights, would amount to imposing upon him an obligation which he could not possibly perform, since he was incapable of appointing an agent or attorney, and could not because

of his age, act for himself. We therefore hold that his common-law right to sue by his father and next friend was not taken from him by his failure to file a rejection, and consequently we think the court erred in entering judgment for defendant, notwithstanding the verdict.

For the reasons indicated, the judgment of the superior court is reversed and the cause is remanded with directions to enter judgment for plaintiff in the sum of $1,200 upon the verdict heretofore rendered in his favor by the jury.

*Judgment reversed and cause remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.