Leo Brooks et al., Appellees, v. Ernest H. Snyder et al., Defendants.    Ernest H. Snyder, Appellant.

Gen. No. 40,637.

Opinion filed December 5, 1939.

JOHN A. BLOOMINGSTON and HENRY A. BLAIR, both of Chicago, for appellant.

TARNOPOL, FLAMM & SIDEMAN and BEN A. STEWART, all of Chicago, for appellees; IRVING H. FLAMM, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiffs were injured while riding in an automobile that collided with a car owned by defendant Ernest H. Snyder, who was riding in his car while it was being driven by Foster L. Duncan, another defendant. The cause was heard by the court without a jury, resulting in findings and judgment for plaintiffs and against Snyder and Duncan as follows: Leo Brooks, $1,200; Charles Flamm, $311.03; Albert Flamm, $300; Ben Kaye, $100; Gladys Winnick, $100; Sylvia Winnick, $100. There was a finding of malice against Duncan, but the count charging wilful and wanton misconduct against Snyder was withdrawn at the close of all the evidence at the suggestion of the court. Snyder appeals from the judgments entered.

There is substantially no dispute as to the facts. The accident occurred September 19, 1937, between four and five o'clock in the evening. Snyder's car was in need of repairs and he procured Duncan, a mechanic, who worked in a nearby garage but was off duty that day to make the necessary adjustments. Snyder had

never met Duncan before, but had learned of his whereabouts through information obtained at the garage where Duncan was employed. After repairing Snyder's car on Irving Park avenue where it had been parked, Snyder, accompanied by Duncan, drove the car some 8 or 10 miles on a test run. The work was apparently found to be satisfactory and Duncan was paid for his services. After stopping at a gas station about seven p. m., Snyder then picked up a girl whom Duncan knew, drove her to an address on Division street and returned to the north side, where Snyder and Duncan had dinner together in a restaurant. After dinner Duncan asked Snyder if they could go and get his girl and bring her back home. Snyder consented and said he would drive Duncan, but the latter volunteered to do the driving. Shortly after leaving the restaurant they met a man and woman who were friends of Duncan, and this couple were invited to go along for the ride. It was during the course of this trip with Duncan at the wheel and Snyder sitting beside him that the collision in question occurred. The evidence is clear that Duncan violated traffic signals, which resulted in the collision. No complaint is made as to the conduct of the trial and the only question presented is whether Snyder is liable as the owner of the automobile for Duncan's negligent driving under the circumstances presented by the evidence.

As ground for reversal it is urged by Snyder that he was merely Duncan's guest in Snyder's automobile; that he neither directed nor supervised the driving of Duncan; that the doctrine of *respondeat superior* did not apply so as to make Snyder liable for Duncan's negligence; and that the court should therefore have found Snyder not guilty and entered judgment accordingly. Plaintiffs, on the other hand, contend that the use of the car at the time of the accident constituted a joint enterprise. The court so found in his oral opinion rendered at the close of the case, and the evidence

clearly sustains the finding. With reference to this phase of the case Snyder testified that it was agreeable to him to let Duncan drive, ''as long as I was riding''; that ''he [Duncan] was just riding with me for pleasure. I had paid him for the work he did''; that ''at the end of the [test] ride *we* stopped at a filling station and Duncan left the car there. I waited for him; he came back, and *we* got in and came back to the north side. *We* took his girl friend to some relatives on Division street. He had no car of his own and I told him it was O. K. to take her there. After *we* left her *we* went back north and stopped and had something to eat.'' (Italics ours.) The circumstances indicate that Snyder, apparently having nothing in particular to do after the car had been repaired, acceded to Duncan's suggestions and called for Duncan's girl, picked up the couple hereinbefore referred to, and that he and Duncan were driving around together with Snyder's consent. Although Duncan was at the wheel, Snyder never relinquished the direction and supervision of the automobile.

After reviewing the authorities cited by counsel on both sides, we are impelled to hold that the court properly found Snyder liable for Duncan's negligence. The general rule applied by the courts in the numerous cases cited by plaintiffs appears to be that where an owner occupies the car at the time of the accident he is liable for the negligence of the driver if (1) he has not abandoned his right to control the car, or (2) if he exercises or has a right to exercise any control over the driver or the operation of the car, or (3) if the ride is for his benefit or for the mutual benefit of himself and the driver. This rule is set forth in Blashfield's Cyclopedia of Automobile Law and Practice (1935), vol. 5, pp. 66 to 70, as follows:

''By the weight of authority, the owner of a motor vehicle, present therein at the time of an accident caused by its negligent operation, is liable for injuries

resulting though he is not personally at the wheel; the car being driven by one not his servant, but with his permission and in the business of the owner, or in a joint enterprise of the owner and the driver.

"Where an owner is riding in an automobile which is being driven by another in an improper manner, and the evidence does not show a contractual surrender nor an abandonment of the owner's right to control, the inference is warranted that the owner knew of and permitted the improper operation, and he is deemed to have consented to the negligent operation of the machine and the driver's negligence is imputed to him; and if an owner permits some other person to operate his car in which he is riding, whether his wife, child, or a friend, retaining such control of the car as gives him unrestricted right of direction and control, he will be liable for the driver's negligence." This rule finds support in Illinois in *Gates v. Mader,* 316 Ill. 313. In that case the father was the owner of the car. His son was not living at home but visited his parents regularly. The son was driving his mother and some of her friends to a party when the accident occurred. The father was not in the car at the time. In affirming a judgment against the father, as owner of the car, the court said (p. 317) : "If defendant had himself been driving, it could not be denied he would have been liable for negligent injury, and the decided weight of authority, we think, makes him liable, under the evidence in this case, for the negligence of the son. . . .

"In our opinion liability in this case is based on reason and justice."

In *Rapers v. Holmes,* 292 Ill. App. 116, Holmes was the owner of the car and at the time of the accident was sitting beside his wife, who was driving. The jury found against both husband and wife, and in sustaining the verdict against Mr. Holmes the court conceded that under the laws of Indiana, where the accident occurred,

an owner is not liable merely by reason of his owner-ship or of his presence in the car, but that the jury might properly have inferred that Mr. Holmes had not parted with control of the car and that his wife was therefore driving for him as well as for herself.

In *Wheeler v. Darmochwat,* 280 Mass. 553, 183 N. E. 55, the owner of a car, while riding therein, was held liable for the negligence of the driver, whom he had permitted to operate the car, the court announced the rule applicable, as follows (p. 557) : ''When it appears that an owner of an automobile is riding in it while it is being driven by another in an improper manner, and there is no evidence indicating a contractual sur-render, nor evidence of an abandonment, of the owner's right to control it, the inference is warranted that the owner knew of and permitted its improper operation and thus became responsible for the consequences. . . .

''There was no evidence here that there had been any contractual surrender by Darmochwat, the owner, to Wenta, the driver, of the right and power to control the operation of the automobile. We are of opinion that the evidence warranted the inference by the jury that the owner 'had not abandoned the control which . . . *prima facie* belonged to him.' '' The evidence in the case at bar clearly indicates that there was not a contractual surrender or abandonment of Snyder's right to control the car, and the court was justified in finding that Snyder did not abandon the control which prima facie belonged to him.

In England the same rule was applied in *Samson v. Aitchison,* [1912] A. C. 844, by the House of Lords and Privy Council, where in affirming a judgment for plain-tiff the court said:

''Where the owner of a vehicle, being himself in possession and occupation of it, requests or allows an-other person to drive, this will not of itself exclude his right and duty of control; and therefore, in the absence

of further proof that he has abandoned that right by contract or otherwise, the owner is liable as principal for damages caused by the negligence of the person actually driving.''

The common enterprise theory was invoked by the court in *Crawford v. McElhinney,* 171 Iowa 606, 154 N. W. 310. In that case the wife was driving a car belonging to her husband, who was a passenger when the accident occurred. The court, in holding the husband liable, pointed out that he had the right to control the car, and said (p. 623, quoting from *Carpenter v. Campbell Auto Co.,* 159 Iowa 52, 62) : '' 'In every case ·in which it is held that the negligence of the driver cannot be imputed to the party riding with him, [*in this case the owner*], an exception is always made to the effect that where they are engaged in a common enterprise, or where the driver is in an enterprise of any kind for the use and benefit of the party charged, in his employ, or under his control, or where the instrumentality used is under the control and direction and owned by the party charged, and where he *has a right to control and direct it, whether he exercises that right or not,* he is held for the negligence of the driver.' '' (Italics ours.)

In another case in Iowa, *Daggy v. Miller,* 180 Iowa 1146, 162 N. W. 854, the court pointed out that the test in determining liability of an owner who was in the car at the time of the accident depends on whether he has the right to control the operation of the vehicle, and that the owner cannot escape legal responsibility or the consequences of the collision ''by proof that he was himself wholly passive, and took no part in the driving or management or control of the car. He was admittedly the owner of the car, clothed with the right and authority to control it. He was present where, had he so minded, he could have exercised such control.'' Numerous other cases cited by plaintiffs, in Arizona, Arkansas, Washington, Mississippi and California, are to the same effect, and we think these de-

cisions clearly represent the current weight of authority.

Defendant cites a number of cases where contrary conclusions were reached, but we think they can readily be distinguished. In *Zeeb v. Bahnmaier,* 103 Kan. 599, an adult son had been accustomed to borrowing his father's car for his own business and pleasure. At the time of the accident he was driving the car to church, and had invited his parents as guests to accompany him. While taking them back home the accident occurred. In this case the jury made a special finding that the father had nothing to do with the operation or control of the car at the time of the accident, and the court said that under the circumstances it would not be justified in finding that the father was liable because of the mere ownership of the car.

In *Hartley v. Miller,* 165 Mich. 115, 130 N. W. 336, one Lootens called on Miller the night before the accident and asked for the loan of his car for the next day, to which Miller consented. Lootens accordingly called for the car on the following day and invited Miller to ride along with him to Lootens' home. When they arrived there Lootens and his company insisted upon Miller accompanying them on a further journey to which Miller finally acceded. The court pointed out that Miller had lent the machine to Lootens, and held that under the great weight of the evidence the automobile had ''passed into the possession and control of defendant Lootens for the day, and that Miller did not have the right or authority to dictate or direct the manner in which the automobile should be operated; that it was as much in the control of Lootens for that day as it would have been had he been the absolute owner thereof.''

In *Virginia Ry. & P. Co. v. Gorsuch,* 120 Va. 655, the wife was the owner of an automobile, and her husband who was employed in another city had borrowed the car from her. He had been in possession thereof in the city where he was employed for about a week, and when

his wife visited him by train, and while she was riding with him in the car an accident occurred while he was operating the car. The court held that under the circumstances the husband was a bailee, and ''until she resumed control of the property, the operation of the car was as completely within his control as if he had been the fee simple owner thereof.'' In substantially all the other decisions cited by defendant, the court found some circumstances indicating that the owner had parted with control of the car, or the presumption that he had not done so was not rebutted by competent evidence.

The trial court in the case at bar had an opportunity to judge the character and credibility of the witnesses and understand the true factual situation presented, and we think the findings against Snyder and Duncan were amply warranted by the evidence and should accordingly be sustained, under the current decisions in this and other states. Judgment is affirmed.

*Judgment affirmed.*

JOHN J. SULLIVAN, P. J., and SCANLAN, J., concur.