Roberta Palmer and Robert L. Palmer, Appellees,
v. George Miller, Appellant.

Opinion filed May 31, 1941.

Stone & Fowler, of Marion, and Roy R. Helm, of Metropolis, for appellant.

Grover E. Holmes and Carl H. Smith, both of Metropolis, and Alfred Roy Hulbert, of Chicago, for appellees; Alfred Roy Hulbert, of counsel.

Mr. Justice Culbertson delivered the opinion of the court.

This is an appeal from two judgments entered in the circuit court of Massac county, against the appellant George Miller (hereinafter called defendant), and in favor of Roberta Palmer and her husband, Robert L. Palmer, appellees (hereinafter called plaintiffs), in the respective sums of $20,091.67 and $5,022.91. The judgments were entered on verdicts in the sums of $20,000 and $5,000 respectively, which were returned in an action for personal injuries sustained by the plaintiff Roberta Palmer.

The complaint consisted of two counts, which were identical with the exception of the paragraph relating to the damages claimed to have been sustained by each of the plaintiffs. In the first count of the complaint, the plaintiff Roberta Palmer claimed damages by reason of her personal injuries, in the sum of $50,000, and in the second count of the complaint, plaintiff Robert L. Palmer claimed damages in the sum of $15,000 by reason of expenditures he had made or become liable for in connection with the hospitalization of his wife and treatment of her injuries.

The allegations of the complaint recited the facts as hereinafter referred to, and the only portion of the complaint which is material for consideration and as to which objection is raised by the defendant, is that containing the allegation of negligence upon which the plaintiffs base their cause of action. Such allegation is specifically as follows:

"Whereupon the defendant, George Miller, by Dan Park who was then and there acting as his servant and agent, was using, and driving and operating said automobile along and upon the aforesaid highway for the purpose of transporting the defendant, George Miller, from the place of his accident to a physician or surgeon for his treatment. At the said time and place, and in said automobile the plaintiff, Roberta Palmer, was riding and acting as a nurse in an emergency for the purpose of rendering emergency treatment and care to the said George Miller while he was being taken to a doctor. She was riding beside the two men aforesaid, upon and in furtherance of the business of and for the sole benefit of the defendant, George Miller. Thereupon, the defendant, George Miller, by his servant and agent, Dan Park, did one or all of the following things, which caused or proximately contributed to cause the resulting accident in which damages and losses were sustained by the plaintiffs." (Thereafter the complaint sets out in subparagraphs the specific acts which it is claimed amount to negligence). The second count of the complaint varies in concluding with an allegation of damages which the plaintiff Robert L. Palmer claimed to have sustained.

The answer of defendant contains specific denials of the allegations in the complaint, and specifically denies that Dan Park was acting as the agent and servant of the defendant in operating the automobile. Three additional defenses denying ownership, operation, and management or control of the automobile, and the agency or employment of Dan Park by the defendant, were likewise filed, and in one of such additional defenses, defendant further alleged that at the time of the accident he was an infant under the age of 21 years and, because of his minority, he was legally incapable at the time of acting by or through an agent, servant, or employee, and that Dan Park, at such time, could

not, by reason of defendant's minority, have been operating the automobile as agent or servant of the defendant. Plaintiffs replied reaffirming the allegations of the complaint and adding the further allegation that the automobile was being driven for and on behalf of, and upon the business of the defendant and for his benefit and that he was present riding therein. Defendant filed motions to strike portions of plaintiffs' reply and plaintiffs thereupon filed a motion to carry back such motions to strike to the answer of defendant. Both motions were denied by the court.

The evidence disclosed that on May 29, 1939, a dance was being held at the Metropolis Country Club and that defendant, George Miller, was driving and in possession of his family automobile with the permission of his parents, and had taken a party of six people, including Dan Park, to the dance. While the defendant, George Miller, was at the club, he cut his wrist severely and was seen to be bleeding profusely. Dan Park, who was a member of defendant's party, noted defendant's condition. It was decided that defendant should be driven to town to a doctor who was competent to treat his wound. The defendant gave his car keys to Dan Park and as a result of insistence or persuasion or mild coercion, defendant walked up from the basement to the place where his family car was parked. Three members of the party were already in the car. Dan Park got into the driver's seat. The defendant entered at the right front door and sat in the front seat beside the driver. Just before they started to drive away, Dan Park remembered that the plaintiff, Roberta Palmer, was a trained nurse, and he immediately ran back to the club house to get Mrs. Palmer, leaving the defendant Miller in the car. He described the defendant's injury to the plaintiff and asked her to ride into town to take care of defendant Miller and his injury. She left the dance floor im-

mediately and went out to the car. She noted, at the time, that defendant's wound was still bleeding and she tightened up the tourniquet on his wound. She was then invited by Dan Park, the driver, and she testified (although there is some dispute in the evidence on this point) that she was also requested to go along by the defendant, George Miller, and by one of the other occupants of the automobile. All of the persons in the automobile knew that Mrs. Palmer was a trained nurse.

As the car was being driven along, one of the occupants cautioned the driver not to go so fast. The defendant testified that he lost consciousness as the car left the country club grounds, but evidence on behalf of the plaintiff was contradictory as to this point. The plaintiff, Mrs. Palmer, testified that she protested about the speed and the manner in which the car was being driven, but she stated that she was so busy taking care of defendant and attending to his needs that she did not notice what the driver was doing. As the car raced along the pavement at a speed of 60 to 80 miles an hour, it ran off the pavement, slid along the gravel and crashed into a tree, ripping off the rear portion of the car, went up on its front end, fell over on its top and spun on the pavement. Dan Park testified that a car with bright headlights coming in the opposite direction caused him to swerve to the right and lose control of the car he was driving. The plaintiff, Mrs. Palmer, was thrown out and caught by the front bumper and sustained some very extensive and painful injuries which required, and will in the future require, painful surgical operations. She never lost consciousness. No contention is made by the defendant that damages are excessive in this case. The evidence of pain, disfigurement and surgery make it apparent that the damages were not, in fact, excessive in view of the injuries sustained by the plaintiff.

The evidence also disclosed that the defendant was 20 years and 10 months old at the time of the accident, and there was evidence in the record that he was in business with his father and was being paid a salary and commissions, and was to be married the day following the accident and, in fact, was married a few days thereafter. It is contended by plaintiffs that the minor was emancipated and matters relating to such minor's liability, based on such emancipation, are urged, in addition to basic grounds for liability discussed in this opinion, as well as the contention that even if the relationship of master and servant were required to be established, liability could be sustained because the contracts involved in this case were for urgent necessities and that the employment of Dan Park and Mrs. Palmer could not thereafter be repudiated. In view of what we have to say in the course of this opinion on the question of liability of a minor, under the facts and circumstances in this case, it is unnecessary to discuss such contentions relating to the emancipation of the minor defendant, and the other point referred to.

Motions for directed verdicts at the close of plaintiffs' evidence and at the close of all the evidence, and motions for judgment notwithstanding the verdict, for new trial, and in arrest of judgment, were all denied by the trial court, and judgments were entered upon the verdicts in favor of plaintiff, Roberta Palmer, and her husband, Robert L. Palmer, in the sum of $20,000 and $5,000, respectively.

The basic principle upon which this action is to be determined is whether or not the negligence of the driver may be imputed to the minor, and whether or not it is essential that a technical agency be established and proven on the part of such driver. The pleading phase of such question was urged by the defendant, independently of the contention that defendant could

not be liable under the facts, as a matter of law. The contention of the defendant was that the allegations of the complaint amounted to a selection of a theory of liability which was untenable as a matter of law. It is contended by the defendant, by reason of the fact that the complaint contains the words, ''servant and agent,'' that there was a failure of essential evidence in the plaintiffs' case; that while an infant is liable for torts committed by him personally, he is incapable of appointing an agent and is not liable for torts committed by an agent or servant. We shall have more to say about such contention in the course of this opinion, but it will suffice, for the purposes of consideration of such objection, to state that it is not essential that all the allegations of the complaint such as the agency of the driver of an automobile be proven where the complaint charges that the owner (or as in this case, the defendant who had permissive control of the automobile), was present in the car and the trip was for his exclusive business. In such case the allegations ''servant and agent'' may be treated as surplusage (*Rich v. Albrecht*, 300 Ill. App. 493). Defendant's liability in such case is not based upon the strict doctrine of master and servant, or principal and agent, but upon the doctrine of imputed negligence which arises from a presence of the owner (or permissive user) in the automobile at the time of the accident, which, although it is not being driven by his servant, is being driven with his permission and in his business, or in a joint enterprize of such owner and the driver (*Brooks v. Snyder*, 302 Ill. App. 432; *Gillis v. Jurzyna*, 284 Ill. App. 174). In the words of the court in *Brooks v. Snyder, supra* (page 435).

'' . . . where an owner occupies the car at the time of the accident he is liable for the negligence of the driver if (1) he has not abandoned his right to control the car, or (2) if he exercises or has a right to exercise

any control over the driver or the operation of the car, or (3) if the ride is for his benefit or for the mutual benefit of himself and the driver. This rule is set forth in Blashfield's Cyclopedia of Automobile Law and Practice (1935), vol. 5, pp. 66 to 70, as follows:

" 'By the weight of authority, the owner of a motor vehicle, present therein at the time of an accident caused by its negligent operation, is liable for injuries resulting though he is not personally at the wheel; the car being driven by one not his servant, but with his permission and in the business of the owner, or in a joint enterprise of the owner and the driver.

" 'Where an owner is riding in an automobile which is being driven by another in an improper manner, and the evidence does not show a contractual surrender nor an abandonment of the owner's right to control, the inference is warranted that the owner knew of and permitted the improper operation, and he is deemed to have consented to the negligent operation of the machine and the driver's negligence is imputed to him; and if an owner permits some other person to operate his car in which he is riding, whether his wife, child, or a friend, retaining such control of the car as gives him unrestricted right of direction and control, he will be liable for the driver's negligence.' "

Obviously, there was sufficient evidence in the record, even though the testimony was disputed on this point, to justify liability on the part of the defendant strictly in accordance with the doctrines outlined in the case of *Brooks v. Snyder, supra.* The evidence disclosed that the defendant had given the keys to Dan Park, the trip was for his exclusive benefit and for the apparent purpose of preventing him from bleeding to death or suffering severely from the loss of blood. The evidence justified the conclusion that defendant accepted the presence and services of the driver, Dan Park, and the plaintiff, Mrs. Palmer. He had the right

to control Dan Park and there was no contractual surrender or abandonment of such right to control, and under the doctrine of the cases referred to, the carelessness of Dan Park could properly have been imputed to him.

The question then arises as to whether or not there is anything in the fact of the minority of the defendant, George Miller, which under the facts and circumstances in this case, tends to relieve him of liability. A review of such precedents as have been directed to our attention on behalf of both plaintiffs and defendant, and an independent survey of cases relating to such principles, leads this court to the conclusion that the defendant, George Miller, may be held to be equally liable, under the principles of the case of *Brooks v. Snyder, supra,* despite the fact of his minority. In this connection the only case which we have been able to discover which is directly in point under the precise set of facts, and which is certainly a case in which the facts do not as clearly tend to establish liability as do the facts in the instant case, is the case of *Feagles v. Sullivan,* 32 Pa. D. & C., 47, in which case the principles determinative of the case before us, were likewise before the Pennsylvania court. In that case the court, in considering the principle involved, made reference to the Restatement of the Law prepared by the American Law Institute. In such Restatement of the Law on the subject of Agency (section 20c) is found the following statement, ''Thus, infants and persons lacking full capacity because of mental defects are affected by acts done on their account by a person whom they direct so to act, to the extent to which they have capacity to give consent and become parties to the transaction.'' In the *Feagles* case such comment was cited in support of the conclusion of the court, as well as certain comments appearing in the Tort section of the American Law Institute Restatement of the Law,

which was quoted in support of the imputed negligence theory and followed by analogy in such case. In the *Feagles* case a minor who had borrowed his father's automobile for a pleasure ride and who had permitted a friend to drive, was held liable to a third person when the friend negligently struck the other automobile, and the minor, at the time of the accident, was sitting beside the friend. The court stated specifically that a minor has capacity to appoint another to drive the minor's automobile, and the minor is liable when the driver negligently causes an accident.

Some point is made by the defendant that the cases of *Hodge v. Feiner,* 338 Mo. 268, 90 S. W. (2d) 90, 103 A. L. R. 483, and *Burns v. Smith,* 29 Ind. App. 181, 64 N. E. 94, and similar cases, militate against such conclusion and support the principle contended for by the defendant that the negligence of the driver could not, under the facts in the instant case, be imputed to the minor defendant. We do not find that such cases sustain that position. In the case of *Hodge v. Feiner, supra,* the court in discussing principles involved in other cases, emphasized the fact that the minor defendant was not present at the time of the collision, and discussed in detail the principles involved in other cases in which the distinction arises out of the presence of the minor, and his absence at the time of the accident is clearly delineated. Such court states, in discussing one of such cases (103 A. L. R. 486), ''It is contended that since deceased was a minor, she could not lawfully appoint an agent so as to be held responsible for the negligence of such agent. Deceased was 17 years of age and therefore old enough to be responsible for her own tort. . . . Miss Robertson was driving by the permission of deceased, and therefore the car at the time, in contemplation of law, was under the direction of the deceased. It is our opinion that the negligence, if any, of Miss Robertson was imputable to deceased.'' In our opinion there is a vast

distinction between the two cases. In the *Hodge* case, now before us, a minor was sought to be held responsible in tort solely on the doctrine of *respondeat superior,* when the tort was not committed in the minor's presence. In the *McKerall v. St. Louis-San Francisco Ry. Co.* (Mo. App.), 257 S. W. 166, the court of appeals held that, "the car in which the minor was riding when she met her death was, in contemplation of law, under the direction of the minor at the time of the accident. The negligence of the driver was, in contemplation of law, her own. The *McKerall* Case finds support in the case of *Atchison, etc., R. Co. v. McNulty* (C. C. A.) 285 F. 97, certiorari denied 262 U. S. 746, 43 S. Ct. 521, 67 L. Ed. 1212. . . . In many of these imputed negligence cases it may be said that the ultimate conclusion reached by the decisions is that the party to whom the negligence is imputed actually participated in the act of negligence or was in charge of the car or vehicle, and therefore had the right and authority to direct the driver of the vehicle in the manner of its operation."

In *Burns v. Smith, supra,* the court likewise emphasized the fact that tortious acts for which the infant could be made responsible were those committed by himself or under his immediate inspection or direction. It is thus clear that the doctrine of imputed negligence has been applied consistently to an infant who is present in an automobile at the time of the accident involved in the particular case. While most of such cases have considered the question of the imputation of contributory negligence to the minor, they are equally applicable to the question of the imputation of negligence generally to the minor for the purpose of fixing liability. As stated in the *McKerall* case referred to in *Hodge v. Feiner, supra,* the defendant in the instant case would have been responsible for a tort committed by himself personally, under the law. He is equally responsible for a tort committed by the driver, Dan

Park, who, in contemplation of law, was under his direction while he was present in the automobile which was being driven for his exclusive benefit.

Numerous objections are made by defendant to instructions given on behalf of plaintiffs, and refused when tendered on behalf of defendant, and to modification of instructions. To discuss all of such objections in detail would extend this opinion beyond all reasonable bounds and would serve no useful purpose. We have considered all of such objections and find no reversible error in the giving or refusal, or modification, of any of such instructions, under the facts and circumstances in this case.

Instructions to which objection is taken which relate to imputed negligence and the doctrine of principal and agent did not have the tendency to mislead the jury, in view of instructions actually given, and the evidence in the case. What we have said in this opinion as to the doctrine of imputed negligence as applied to the facts in this case, makes it unnecessary to discuss such instructions in detail. Certain objections relating to instructions made by defendant make it necessary for us to observe, in passing, that the guest statute in this State did not apply to the plaintiff, Mrs. Palmer (*Foale v. Linsky,* 279 Ill. App. 58), and that the instructions referring to the duty of defendant to plaintiff, Roberta Palmer, to exercise ordinary care toward her, were not erroneous (*Radatz v. Tribune Co.,* 293 Ill. App. 315; *Kijowski v. Times Publishing Corp.,* 298 Ill. App. 236, affirmed 372 Ill. 311), nor do we find error in the plaintiffs given instructions relating to damages (*Holmes v. Holmes,* 64 Ill. 294); a number of objections to instructions refused on behalf of defendant were without foundation for the reason that the instructions refused constituted simply repetition of instructions actually given by the court. We do not deem it necessary to elaborate upon this point. Similarly, defendant's instructions which were predi-

cated on the theory that there was a duty on part of the plaintiff, Mrs. Palmer, to warn the driver, were properly refused in view of the long line of cases in this State establishing that there is no such duty on part of a passenger (*Smith v. Carter,* 302 Ill. App. 235; *O'Neal v. Caffarello,* 303 Ill. App. 574). In this connection, the contention that the plaintiff, Roberta Palmer, was guilty of contributory negligence, as a matter of law, is not sound under the facts in the record in this case. The most that could be said is that the question of contributory negligence was one for the jury.

One of defendant's instructions actually given, specifically instructed the jury that unless the jury believed from the greater weight of the evidence that Dan Park was guilty of negligence as charged in the complaint and was acting at such time as the servant of George Miller, and that the plaintiff, Roberta Palmer, was at such time in the exercise of due care and caution for her own safety, that the defendant, George Miller, would not be liable under such circumstances. In view of such instructions, the defendant's complaint that the jury was not sufficiently instructed on such points cannot be maintained.

In connection with the instructions as a whole, it should be kept in mind that the test, as stated in the case of *Reivitz v. Chicago Rapid Transit Co.,* 327 Ill. 207, at 213, is "Not what meaning the ingenuity of counsel can, at their leisure, attribute to the instructions, but how and in what sense, under the evidence before them and the circumstances of the trial, ordinary men, acting as jurors, will understand the instructions."

In considering instructions, courts of review likewise determine, first, whether the instructions announce correct propositions of law as applicable to the facts in the case, and, secondly, assuming that they do not, the courts then look at the evidence to determine

whether the jury may have been misled by the party against whom the instruction was given may have been otherwise prejudiced by it (*Beard v. Maxwell,* 113 Ill. 440). If, after having thus considered the instructions, the court is of the opinion that the jury would not have been misled and that substantial justice has been done, then the fact that the instructions may have been erroneous would not be a basis for reversal. In the instant case, some of the instructions, taken separately and without reference to instructions actually given may, on their face, have been characterized as erroneous. Applying the test in the cases referred to, however, we do not find that there is any reversible error in any of the instructions given, refused, or modified, to which defendant makes objection.

Objection is also made that a statement of counsel for plaintiffs, in his argument to the jury, to the effect that, "You are not concerned with who pays the judgment, whether George Miller, or someone else," was prejudicial and constitutes reversible error for the reason that it suggests to the jury that the defendant was insured. Plaintiffs' counsel denies that any such statement was made. No record of the argument was made in the court below but the report of proceedings incorporated such statement as having been made by counsel for plaintiffs. Plaintiffs' counsel contends that such statement was incorporated in the record as the result of misunderstanding on part of defendant's counsel. The record shows that objection was made to the statement, if made, as being prejudicial, and that such objection was sustained.

There was nothing in the statement which necessarily implied that there was insurance in the case, and while in a proper case such statement might have been deemed to be so prejudicial as to require reversal, the question to be considered by a court of review in any such case is, whether the argument which is objected to as being improper, was of such character as to

prejudice the defendant. No contention was made that the verdict in this case is excessive. It is difficult to see how such statement, if made, would have been prejudicial to the defendant, under the facts in the case, and that a failure to make such statement would have produced a different result. In view of such circumstances and after consideration of the entire record in this case, we cannot conclude that there is any basis for reversal because of such statement purportedly made by the counsel for plaintiffs.

There being no reversible error in the record, the judgment of the circuit court of Massac county, will be affirmed.

*Affirmed.*