Standard Mutual Insurance Company, a Corporation, Plaintiff-Appellee, v. Charles Kinsolving, Jr., et al., Defendants.
Ruth Ann Kozak, Now Ruth Ann Ross, Defendant-Appellant.

Gen. No. 10,285.

Third District.

May 18, 1960.

Berry and O'Conor, and Max G. Gulo, of Streator, for appellant.

Maurice W. Kepner, of Springfield, for appellee.

CARROLL, JUSTICE.

The defendant, Ruth Ann Kozak, now Ruth Ann Ross, has appealed from a declaratory judgment of the Circuit Court of Sangamon County exempting plaintiff from any obligation to defend or pay any judgment against the holder of a policy of automobile liability insurance in an action for personal injuries. Plaintiff has cross-appealed from that portion of said declaratory judgment holding defendant Kozak to be entitled to the benefits of the medical coverage provided by said policy.

The record discloses that on February 21, 1956, the defendant Charles Kinsolving, Jr., a resident of LaSalle County, Illinois, applied to the Hale Jackson Insurance Agency in LaSalle County for a liability insurance policy to cover his automobile. The application was forwarded to the home office of plaintiff insurance company in Sangamon County, Illinois, where it was received February 24, 1956. After subjecting the application to its underwriting process, the plaintiff decided to accept the risk. Thereupon it prepared the policy which was then executed by its president and secretary under date of February 24, 1956, and mailed to the Hale Jackson Agency in LaSalle County.

Upon receipt of the policy in LaSalle County, the agent counter-signed the same and delivered it to Kinsolving. On July 9, 1956, the automobile covered by the policy which was then being driven by Mary Lou Carter, was involved in an accident in LaSalle County. The defendants Kinsolving and Kozak were passengers in the automobile at the time of the accident. As a result of said accident Kozak and Carter sustained injuries. On July 10, 1956, plaintiff was advised of the accident by telephone and assigned the handling of the case to Attorney Edward Connelly of Streator for investigation. On July 12, the plaintiff received a copy of the LaSalle County Sheriff's accident report which listed Kinsolving as the driver of the automobile. On July 15 plaintiff received a written statement given to its investigator by Kinsolving on July 11 in which Kinsolving said he was the driver of the automobile at the time of the accident. On July 18 plaintiff received the regular accident report signed by Kinsolving stating that he was the driver at the time of the accident. On July 23, 1956, the company received a statement taken from Ruth Ann Kozak on July 10 and in which she stated Kinsolving was the driver of the automobile. On August 25, 1957, Ruth Ann Kozak filed her verified complaint against Kinsolving in the Circuit Court of LaSalle County for the injuries which she sustained in the accident and alleging him to be the driver of the automobile and charging him with various acts of wilful and wanton misconduct in its operation. On Sept. 24, 1957, the plaintiff received a supplementary statement taken from Kinsolving Sept. 20, 1957, in which he again claimed to be the driver of the automobile. On the morning of March 13, 1958, Kinsolving met with attorneys Maurice Kempner and Connelly at the accident scene. On that occasion he described how the accident occurred and told the attorneys that he was driving the automobile.

On the afternoon of the same day, the discovery deposition of Ruth Ann Kozak was taken and she then stated that Mary Lou Carter was driving the Kinsolving automobile at the time of the accident. The deposition of Kinsolving was also taken on that day and he then stated that Mary Lou Carter and not he was driving his automobile when the accident occurred on July 9, 1956. Both Kinsolving and Kozak stated in their depositions that a lady who came upon the scene immediately after the accident suggested to the three car occupants that it would be better if they said Kinsolving was driving; that they agreed to adopt the lady's suggestion and had since then maintained that Kinsolving was the driver.

On March 28, 1958, plaintiff served a reservation of rights notice on Kinsolving.

The instant action for a declaratory judgment was instituted in the Circuit Court of Sangamon County on January 20, 1959. On February 10, 1959, Kozak filed a motion to transfer the cause to the Circuit Court of LaSalle County. The grounds set out in said motion were that she and Kinsolving resided in LaSalle County; that none of the defendants ever lived in Sangamon County; that the insurance policy involved was issued by the agent of plaintiff company in LaSalle County and no dealings concerning the same were conducted in Sangamon County. Affidavits in support of the motion were filed and plaintiff filed a counter-affidavit. The motion to transfer the cause was denied and Kozak filed her answer to the complaint. She also filed an affirmative defense alleging the same facts recited in the affidavits supporting the motions to transfer the cause. Plaintiff then moved for summary judgment and supported its motion by affidavits setting forth in detail the statements made by Kozak and Kinsolving as to the identity of the driver of the automobile at the time of the accident.

The defendant Kozak filed a counter-affidavit in which she stated that at the time of the accident she was riding as a guest passenger in the Kinsolving automobile; that at the time of said accident Mary Lou Carter was sitting behind the steering wheel of said automobile; that immediately prior to the accident Kinsolving grabbed the steering wheel and attempted to put his foot on the brake but in fact put it on the accelerator which caused the accident; that Kinsolving was at said time in possession and control of said automobile and was in fact driving the same.

On motion of plaintiff the court struck the affirmative defense set up in the answer and granted the motion for summary judgment.

The questions raised by this appeal are (1) whether the venue was properly laid in Sangamon County and (2) whether plaintiff has been relieved of its obligations under both the liability and medical payment coverage of the policy because of a breach of the conditions of said policy.

The Civil Practice Act provides that every action must be commenced either in the county where any defendant resides or "in the county in which the transaction or some part thereof occurred out of which the cause of action arose." Par. 5, Chap. 110, Ill. Rev. Stats. 1959. Plaintiff's action seeks a determination by the court as to whether either of the defendants have any rights under a contract of insurance between plaintiff and Charles Kinsolving, Jr. Accordingly that which entered into the execution of said contract constituted the transaction out of which this cause of action arises.

█ Defendant argues that because Kinsolving applied to an agent in LaSalle County for the policy in question and it was delivered to him in that County the contract was actually made in LaSalle County and that which took place in Sangamon County amounted

to but preliminary or insignificant details insufficient to be considered a part of the transaction. We cannot agree with such contention. Defendant's application was mailed to plaintiff's home office in Sangamon County where the plaintiff made the decision to accept the same. The policy was prepared and executed in Sangamon County and concludes with the following paragraph:

"In witness whereof, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless completed by the attachment hereto of a declaration page designated as Automobile Policy— Part Two and countersigned on the aforesaid declarations page by a duly authorized representatave of the Company."

It thus appears that the affixing of the signatures of the president and secretary of plaintiff company and the attachment of the declaratory page were conditions precedent to the effectiveness of the policy and that such conditions were performed in Sangamon County. The factor decisive of the question as to where the transaction or a part thereof occurred are pointed out in People v. Lange, 8 Ill.2d 437, 134 N.E. 2d 266. In that case a resident of Piatt County applied to the State Automobile Department for a truck license. The application was processed in Sangamon County and the license mailed to Piatt County. A suit for the license fee was brought in Sangamon County. In rejecting the contention that the action was commenced in the wrong venue, the court said:

"Here it is alleged without denial that defendant applied for, partially paid for, and received his licenses for the privilege of using the highways at Springfield, in Sangamon County, and that

185

every step taken by the plaintiff in acting upon defendant's application likewise occurred there. All these acts were an integral part of plaintiff's cause of action and which he would have to establish in order to recover the disputed license fees and privilege taxes from defendant. Under such circumstances it appears that a very substantial part of the 'transaction' out of which plaintiff's individual cause of action arose took place in Sangamon County. (Cf. Christopher v. West, 345 Ill. App. 515, 104 N.E.2d 309; Schmelzle v. Transportation Investment Corp. 341 Ill. App. 639, 94 N.E.2d 682). We conclude, therefore, that Sangamon County was the proper venue and that the circuit court did not err when it denied the plea which challenged the court's jurisdiction on such grounds."

In Keystone Steel & Wire Co. v. Price Iron & Steel Co., 345 Ill. App. 305, 103 N.E.2d 143, the action was for damages for defendant's failure to furnish scrap as provided by a contract which was prepared and signed by plaintiff in Peoria County and then forwarded to defendant who signed it in Cook County. Peoria was held to be a proper venue and in so deciding the court said:

"... it makes no difference which party signed (the contract) first, or where it was delivered. It shows that part of the transaction took place in Peoria County, and the other part in Cook County, and it is our conclusion that the Court (Peoria County) did have jurisdiction to try the case. . . ."

La Ham v. Sterling Canning Co., Inc., 321 Ill. App. 32, 52 N.E.2d 467, cited by defendant does not support her position for the reason pointed out by the Su-

preme Court in the Lange case that only preliminary and insignificant details of the transaction involved had occurred in the county where the suit was brought. Defendant also cites Winn v. Vogel, 345 Ill. App. 425, 103 N.E.2d 673. In that case the plaintiff brought suit in Williamson County on a contract made in Douglas County for the sale of some hogs. Plaintiff deposited a check for the price of the hogs in a bank in Williamson County. The court held Douglas County to be the proper venue and that the depositing of the check was of no importance since it occurred between plaintiff and a third party. In the instant case no question as to dealing with a third party in Sangamon County is involved and the Winn case is clearly inapplicable. The trial court did not err in denying defendant's motion to transfer the cause to LaSalle County.

The policy in question contains the following conditions:

"1. Notice of Accident—Coverages A, B, C–1 and C–2. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

18. Assistance and Cooperation of the Insured —Coverages A, B, D, E, F, G, H, I and J. The insured shall cooperate with the company and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The

insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

Plaintiff's theory is that Kinsolving, the insured, breached the foregoing conditions of the policy by falsely representing to plaintiff that he was the driver of the car at the time of the accident when in fact Mary Lou Carter was driving the car and that in consequence of such breach plaintiff was relieved from liability under its policy. Defendant apparently takes the position that Kinsolving was in control of the automobile at the time of the accident which constructively made him its driver and that his subsequent statement that he was driving the car was not a misrepresentation of a fact material to his liability. In short, defendant urges that if there was a misrepresentation of fact it was not material to the question of liability because Kinsolving was liable anyway.

Under the policy conditions it became the duty of defendant to furnish plaintiff, as soon as practical, with certain information with respect to said accident and give his assistance and cooperation to plaintiff. The record shows that two days after the accident the defendant signed a written statement that he was the driver of the automobile. On Sept. 20, 1957, he gave plaintiff another statement in which he again stated he was the driver of the automobile. During all of the period from Sept. 20, 1957, until March 13, 1958, he permitted plaintiff to believe that he had truthfully disclosed the identity of the driver of the automobile. On the latter date his deposition was taken and he then disclosed for the first time that Mary Lou Carter and not he was driving the automobile when the accident occurred. Under such circumstances we think

there can be no room for any serious doubt but that defendant wilfully withheld from plaintiff the true facts as to who was driving the automobile. Certainly his tardy decision to tell the truth cannot be characterized as evidencing any intention to discharge his duty under the cooperation clause of the policy by promptly giving an honest statement regarding the circumstances surrounding the accident.

█ Defendant's argument that because plaintiff might be liable under the true facts there was no misrepresentation of facts material to liability entirely overlooks the important factor that plaintiff's action is upon a contract between it and the defendant and the issue is whether defendant breached that contract. If cooperation on the part of defendant did not require him to honestly disclose all of the pertinent facts concerning the accident, then the cooperation clause in the contract would be meaningless. Obviously the purpose of such clause is to enable the insurer to determine whether there is a defense to a claim growing out of an accident and if so to properly defend against it. In Metropolitan Casualty Ins. Co. of New York v. Richardson, 81 F. Supp. 310 (SD Ill. 1948) the court states:

> "It is the duty of the insured to give a full, frank and complete statement of the cause, conditions and circumstances of the accident and the conduct of the parties at the time in order that the insurer may properly present its defense. One of the leading cases on this subject is United States Fidelity & Guaranty Co. v. Wyer, 60 F. 2d 856, a decision of the Circuit Court of Appeals, Tenth Circuit. In reversing a judgment for plaintiff the Court there quoted with approval the language of Justice Cardozo in Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E.

189

367, 369, 72 A. L. R. 1443, as follows: 'Co-operation does not mean that the assured is to combine with the insurer to present a sham defense. Co-operation does mean that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense.' ".

To render a fact material it is not necessary that it be conclusive on the question of liability. Defendant's contract obligated him to disclose the identity of the driver of the automobile and he was not relieved of such obligation because he might be liable on a theory other than under the misrepresented facts. Defendant's argument that the possibility of recovery by the passenger upon some theory renders the defendant's misrepresentation immaterial would seem to be but another way of saying that prejudice to the insurer must be shown. Our conviction in that respect arises in part from the statement in defendant's brief that "there is no injury or prejudice to the insurance company."

The question as to what constitutes a breach of the cooperation clause in an insurance contract was considered in Allstate Ins. Co. v. Keller, 17 Ill.App.2d 44, 149 N.E.2d 482, where the facts were almost identical with those involved in the instant appeal and the court expressed its views in the following language:

"A contract of automobile liability insurance is more than a simple agreement between two parties that the the insurer will indemnify and defend the insured for losses incurred by him in the negligent operation of his automobile. It is a contract which protects both the insured and the public from the hazards of financial distress to which they may become victims as a result of

engaging in traffic upon our streets and highways.

"When we consider the millions of vehicles operating on our highways, and the ever increasing number of accidents, it is apparent that a contract of insurance is of vital concern to all who own and operate such vehicles, to their passengers, and to all who venture forth as mere pedestrians. It is not just an agreement limited to the parties but by its very nature has become one cloaked with a public interest. Integrity should be the essence of the agreement. The cost of insurance is based upon the ratio of the claims paid to the risk written. It is the owners and operators of vehicles upon whom the financial burden of maintaining such contracts must ultimately fall. The insurer must primarily depend upon the veracity of the insured in reporting an accident. Collusive claims are difficult to detect. The courts cannot condone or support a doctrine that might ultimately make the cost of insurance protection prohibitive. Compliance with its terms is therefore vital to all who may benefit, either directly or indirectly, from its provisions. For this reason we are of the opinion that strict compliance is in the best interest of the public and not defendant's theory that failure to comply with the co-operation clause must be shown to be prejudicial to the insurer in order to constitute a breach which would allow the insurer to disclaim liability. . .

"We reject as obsolete and impracticable the concept that a breach of the cooperation clause must be asserted and determined on the basis of an actual showing of prejudice or detriment to the insurer. (For factually comparable cases so de-

191

termined, see Allegretto v. Oregon Automobile Ins. Co., 140 Ore. 538, 13 P.2d 647 (1932); Valladao v. Fireman's Fund Indemnity Co., 13 Cal.2d, 322, 89 P.2d 643 (1939).). We do not believe that the defendant's recanting and telling the truth in the instant case was, in any sense, timely, and conclude that his initial false statements constituted a breach of the co-operation clause."

Defendant cites Brooks v. Snyder, 302 Ill. App. 432, 24 N.E.2d 55; Gates v. Mader, 316 Ill. 313, 147 N. E. 241; and Palmer v. Miller, 310 Ill. App. 582, 35 N.E. 2d 104. The decision in none of these cases turned upon the question as to whether an insured breached his contract with his insurer and accordingly are not in point.

We agree with the court's conclusions in the Allstate case and hold that by his initial false statement as to the identity of the driver of the car, the defendant Charles Kinsolving, Jr. breached certain conditions of his insurance policy which relieved plaintiff from its obligations under the liability coverage of said policy.

We are, however, of the further opinion that the trial court did not err in declaring defendant Ruth Ann Kozak entitled to the benefits of the medical coverage payments as provided by said insurance policy.

The judgment of the Circuit Court of Sangamon County is affirmed.

Affirmed.

REYNOLDS, P. J. and ROETH, J., concur.