Charles F. Rysdon and Elsie Rysdon, His Wife, Plaintiffs-Appellees, v. Margaret Wice and Michael J. Gronsky, Defendants-Appellants.
Margaret Wice and Louise Irace, Counter-Plaintiffs-Appellants, v. Michael J. Gronsky, Defendant-Appellee.

Gen. No. 48,217.

First District, First Division.

February 19, 1962.

Rehearing denied and opinion modified March 22, 1962.

Julius Jesmer and Michael A. Gerrard, of Chicago, for appellants, Margaret Wice and Louise Irace, and Jesmer & Harris and Michael Gerrard, all of Chicago, for counter-plaintiffs-appellants.

Edward M. Solomon, of Chicago, for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiffs Charles F. Rysdon and his wife, Elsie, filed a complaint at law in the Circuit Court against two defendants, Margaret Wice and Michael J. Gronsky, charging each with negligent operation of their

automobiles. Margaret Wice counterclaimed against Gronsky on the same ground. Thereafter, Margaret Wice and her passenger, Louise Irace, filed a separate complaint in the same court against Gronsky. These cases were consolidated for trial. The jury found Gronsky not guilty as to each charge against him, and found Wice guilty, assessing damages at $10,000 for Elsie Rysdon and $798.82 for Charles F. Rysdon. After judgment was entered on the verdicts and post trial motions for a new trial were denied, Wice and Irace prosecuted this appeal.

The testimony of each of the parties is in consonance upon certain facts of the occurrence. At about 11:00 p. m. on October 19, 1958, Wice was driving her 1956 Chevrolet in an easterly direction on 111th Street, and Gronsky was following her in his 1955 Plymouth. Louise Irace was riding with Wice in the front seat. Both cars stopped momentarily at Western Avenue for a red light, and then turned left into the northbound lanes of Western. In the vicinity in question Western Avenue has a width of six lanes, three northbound and three southbound. Immediately after both cars turned, Gronsky moved ahead of Wice, at which point there was a collision of the right rear fender and bumper of Gronsky's car with the left front fender and bumper of Wice's car. The Wice car instantaneously veered left across the center line and collided with the car driven by Rysdon, which had been approaching the intersection on the southbound half of Western Avenue in the lane nearest the center line. When the Rysdon and Wice cars came to rest, Rysdon was in his proper lane, but the Wice car was several feet across the center line into the southbound lane.

The testimony concerning the cause of the initial collision between Wice and Gronsky is in sharp conflict. Wice's testimony indicated that she made a left turn into the northbound lane of Western nearest the center line and had proceeded north about 70

292

feet when Gronsky, heading in the same direction, shot past her on the left in the southbound lane of traffic and suddenly cut across in front of her causing the collision between those two cars. This version was corroborated by Wice's passenger, Irace, and by John Beal, a police officer who said he witnessed the occurrence from the southeast corner of the intersection. Wice testified that the impact caused her to be thrown to the floor of the car thereby losing control of it, and her car then crossed the center line and collided with the southbound Rysdon vehicle.

Gronsky testified that Wice made a wide turn onto Western in the lane nearest the curb, as if to enter a gas station on the northeast corner. He proceeded from behind her into the lane closest to the center line. He said he was going to move over two lanes so he would be in the right lane when he saw through his rear window that Wice was slightly behind him in the next lane and headed in a northwesterly direction at a 45 degree angle. Although he sped up to avoid her, "her left front fender hit [his] right rear fender." This version was corroborated by Nicholas Bulthius, who stated that he was driving south on Western Avenue alongside Rysdon's Pontiac at the time of the occurrence.

 In the light of the evenly balanced and conflicting testimony it is obvious that the result in the trial court turned upon the credibility of the witnesses. There was support in the evidence for the verdicts and we find that they were not against the manifest weight.

 The first error claimed by Wice relates to the giving of Rysdon's instruction No. 13 over her objection. In that instruction the court told the jury:

If you find that the defendant Margaret Wice was not guilty of negligence at or immediately before her collision with the defendant Michael

J. Gronsky but you find further that the said Margaret Wice negligently failed to maintain proper control of her automobile following said collision and that said failure was the direct and proximate cause of her automobile colliding with the automobile of the plaintiffs, Charles Rysdon and Elsie Rysdon, you will find the said defendant Margaret Wice guilty of negligence with respect to plaintiffs, Charles Rysdon and Elsie Rysdon.

Counsel for Wice admits that this instruction correctly states the rule that a person has the duty to exercise due care to control his car even though that car was wrongfully set in motion by the impact of another car. He argues, however, that there was no evidence upon which to base this peremptory instruction. We do not agree. The question submitted to the jury was whether Wice could have controlled her car after the collision with Gronsky so as to avoid the collision with Rysdon. The version given by Wice was that she was thrown to the floor by the initial impact and didn't see the Rysdon car. Her passenger, Irace, testified that she was jarred from the seat and that Wice fell on top of her. Irace also said, however, that she lifted herself up almost instantaneously and saw a car coming south before the second impact. Elsie Rysdon stated she saw two people sitting in the car the instant before they were struck. The jury could have found that Wice either didn't fall to the floor or regained her position and should have maintained control of her car before crossing the middle line, and that her failure so to do was negligence and proximately caused the injuries to the Rysdons. The case of Kerby v. Chicago Motor Coach Co., 28 Ill App2d 259, 171 NE2d 412, relied upon by Wice, is clearly distinguishable. The court there found from the evidence that, following the initial collision, there was nothing

which could have been foreseen or anticipated and hence no evidence of negligence on the part of defendant. We believe there is an evidentiary basis for the instruction here, and find that the giving of it was not error.

■ ■ Wice objects also to the trial court's refusal to give her instruction No. 10, which would have put before the jury § 162 of the Uniform Traffic Act [Ill Rev Stats c 95½, § 162 (1961)], governing the turning of a vehicle from a direct course upon a highway.* We deem this statutory provision inapplicable to the issues here. Wice claimed that Gronsky overtook her vehicle and cut in front of her without warning. The appropriate statutory provisions, as cited in Wice's complaint against Gronsky, would have been § 153 and § 155 of the Uniform Traffic Act, dealing with the overtaking and passing of a vehicle on the left.** Upon the record before us the court properly refused this instruction.

---

* Counsel for Wice sought in the offered instruction to have only sub-section (a) read to the jury. The full section reads as follows:

§ 162. When signal required. (a) No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

(b) A signal of intention to turn right or left shall be given during not less than the last 100 feet travelled by the vehicle before turning.

(c) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

** § 153. Overtaking a vehicle on the left. The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

■ ■ Wice next contends that irrelevant and prejudicial medical evidence was improperly admitted, resulting in an excessive verdict for Elsie Rysdon; that answers to a hypothetical question were based on this incompetent evidence; and that the answers of the orthopedic specialist to hypothetical questions invaded the province of the jury.

Elsie Rysdon, 64 at the time of the accident, was suffering from rheumatoid arthritis which was progressive, affecting every joint of her body and confining her (most of the time for the past five years) to a wheel chair. She had been a patient in numerous hospitals and under constant treatment since 1940. Wice contends that x-rays taken of Mrs. Rysdon's knees and left elbow, introduced over Wice's objections, related to areas of the body not affected by the accident and were introduced solely for the purpose of creating sympathy for the plaintiff. We do not agree. Mrs. Rysdon testified that the collision threw

(a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

(b) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.

§ 155. Limitations on overtaking on the left. (a) No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction.

296

her forward causing her to strike her head, shoulder, arm, elbow and knees. The next day her shoulder, chest and legs hurt. There were black and blue marks on her leg, shoulder, neck and head and she told the examining physician of pain in her knees. Dr. Wendt, her treating physician at Evangelical Hospital, testified that following his examination of Mrs. Rysdon he suspected fractures of the right forearm and of the left hand, with contusions of the left elbow and of both knees, and therefore had x-rays taken immediately, including those in question. While the evidence disclosed no trauma to the knees or left elbow, we think the x-rays as to these areas were properly received upon the question of whether the arthritic condition was or was not aggravated by the accident. Moreover, we conclude that in response to hypothetical questions, the answer of Dr. Walter W. Schwartz, an orthopedic surgeon, based upon reasonable medical certainty, that the accident "might or could have" aggravated the pre-existing arthritic condition, was based upon the evidence and proper in form. This question is thoroughly discussed in Clifford-Jacobs Forging Co. v. Industrial Commission, 19 Ill2d 236, 166 NE2d 582.

Finally, Wice argues that the verdict of $10,000 in favor of Elsie Rysdon was grossly excessive as the result of passion and sympathy. To the extent that this contention is but a repetition of the charges of irrelevant medical evidence and improper testimony of Dr. Schwartz, we have already disposed of it. But Wice cites Olson v. Chicago Transit Authority, 346 Ill App 47, 104 NE2d 542, as being a parallel instance where on appeal the amount of the verdict was found to be against the manifest weight of the evidence. We do not find that case helpful, for in it the testimony of medical experts was in direct conflict, and the physician who treated the plaintiff at the time of the

injury did not testify. In contrast, Rysdon offered the testimony of the treating physician, the x-ray specialist, and an orthopedic surgeon; and defendant Wice presented no medical witnesses in opposition.

Mrs. Rysdon suffered fractures of the ulna of the right arm and of the base of the fourth and fifth metacarpal bones of the left hand. The areas of the fractures were immobilized in plaster casts—for six weeks on the right arm and three weeks on the left. According to the medical experts this immobilization could have caused secondary arthritis in her shoulder where there had been no previous affliction. Mrs. Rysdon testified that prior to the collision she was able to walk a few steps without crutches, dust a little, wash dishes, sew and do some cooking and ironing. She had suffered no arthritic pain for several months prior to the accident. She stated that since the accident she has constant pain. She has had to refrain from doing much sewing because of pain in her right arm. She can no longer take steps without crutches and must use a wheelchair much more of the time. She stated further that she was not able to perform her household duties for over a year. In response to hypothetical questions Dr. Schwartz testified that the aggravated condition of the arthritis is permanent. In light of these facts we cannot say that the verdict was excessive.

Louise Irace, who was Wice's guest passenger at the time of the accident, has joined this appeal on the ground that the verdict finding Gronsky not guilty on her complaint against him was contrary to the law and the evidence. Her position is that the finding of no negligence on the part of Gronsky was against the manifest weight of the evidence, and that this circumstance, combined with the fact that negligence on the part of Wice cannot be imputed to Irace, requires a reversal on her cause. We have already disposed of

the manifest weight issue adversely to Irace's position, and thus have no basis for the application of the imputed negligence doctrine.

Upon careful consideration of the evidence and the issues, we find no reversible errors in this case, and the judgment accordingly is affirmed.

Affirmed.

MURPHY, P. J. and ENGLISH, J., concur.