ALFRED H. SCHMIDT, SR., Admr. of the Estate of Alfred H. Schmidt, Jr., Deceased, Plaintiff-Appellant, *v.* GEORGE A. DATTILO, Defendant-Appellee.

(No. 53110;

First District—March 8, 1971.

Hubert E. Hermanek, of Chicago, (William J. Harte, of counsel,) for appellant.

Pretzel, Stouffer, Nolan & Rooney, of Chicago, (Joseph B. Lederleitner and Howard C. Sorenson, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This was a wrongful death action brought to recover damages for the death of plaintiff's deceased which resulted from a collision involving four automobiles. The jury returned a verdict for the plaintiff in the amount of $25,000, and judgment was entered on that verdict. The trial court thereafter allowed defendant's post trial motion for judgment notwithstanding the verdict. Plaintiff appeals.

The mishap occurred on Mannheim Road, several hundred feet to the north of its intersection with Irving Park Road, shortly before 8:00 A.M. on December 18, 1957. Mannheim Road at that point consists of two northbound and two southbound lanes of traffic, and bears a posted speed limit of 65 miles per hour. Traffic at the aforementioned intersection is controlled by traffic lights, and some 500 feet to the north of the intersection along Mannheim Road a "SLOW" sign is posted. It was undisputed that the weather on the morning in question was foggy or misty, and that the roadway was wet.

An automobile operated by plaintiff's deceased and an automobile operated by defendant Dattilo were proceeding in a southerly direction along Mannheim Road approaching the intersection, and two automobiles operated by Diane Gringer and Thomas Kolar had crossed through the intersection and were proceeding northbound on Mannheim Road. About 200 feet to the north of the intersection the Schmidt vehicle and the Dattilo vehicle were involved in a collision, as or immediately after the Dattilo vehicle crossed from the outer southbound lane into the inner southbound lane of traffic, causing the Schmidt vehicle to enter the northbound lanes of traffic and collide with the vehicles operated by Gringer and Kolar. As a result of the mishap, Schmidt and a passenger in his automobile, Jacques LaVoise, were killed, and Diane Gringer was seriously injured; neither Dattilo nor Kolar were injured.

Diane Gringer brought suit against Dattilo and the estate of Schmidt; the administrator of the estate of Schmidt brought a wrongful death action against Dattilo; and the administrator of the estate of LaVoise brought a wrongful death action against Dattilo. On Dattilo's motion all three actions were consolidated for trial.

After an extensive trial the jury returned verdicts in the following forms: for Gringer and against Dattilo and against Schmidt in stated amounts; for LaVoise and against Dattilo in a stated amount; and for Dattilo and against Schmidt.

Post trial motions filed by the respective parties were acted upon by the trial court in the following manner: Dattilo's motion for judgment notwithstanding the verdict (hereinafter "judgment *n.o.v.*") or for a new trial against Gringer and LaVoise was denied; Schmidt's motion for judgment *n.o.v.* against Gringer was allowed and judgment was entered for Schmidt; and Schmidt's motion against Dattilo for judgment *n.o.v.* was denied, but the court granted a new trial in the Schmidt-Dattilo action.

Appeals to this Court were taken from the judgment in favor of Gringer and against Dattilo, and both Dattilo and Gringer appealed from the judgment *n.o.v.* in favor of Schmidt and against Gringer. Dattilo also filed a Petition for Leave to Appeal to this Court from the order granting the new trial in the Schmidt-Dattilo action. (The LaVoise judgment was not appealed.)

This Court thereafter reversed the judgment in favor of Gringer and against Dattilo and remanded that cause for a new trial; reversed the judgment *n.o.v.* for Schmidt and against Gringer and remanded that cause to the trial court with directions to reinstate the original judgment for Gringer, because Schmidt failed to request alternate relief of a new trial; and, by separate order, denied the Petition for Leave to Appeal filed in the Schmidt-Dattilo matter. See generally, *Gringer v. Dattilo*, 81 Ill.App.2d 244.

On remand, after several motions, pleadings and amendments were filed, the Schmidt-Dattilo action was severed from the other matters, and the other matters were either dismissed or the judgments entered therein satisfied. The Schmidt-Dattilo action was then tried before a jury, resulting in a verdict and judgment for Schmidt in the amount of $25,000. As noted above, the trial court thereafter entered judgment *n.o.v.* for Dattilo, the court specifically noting that "the doctrine of collateral estoppel and *res judicata* are applicable to the contributory negligence of plaintiff's decedent," and this appeal followed.

Plaintiff's evidence at trial consisted of the testimony of defendant, who was called under Section 60 of the Civil Practice Act, the testimony of Diane Gringer, and the sworn depositions of plaintiff, Thomas Kolar and investigating police officers Arnold Locke and Gerald Rider.

Dattilo testified under Section 60 that he was proceeding in the outer southbound lane of traffic along Mannheim Road on the morning in question on his way to work. The weather was misty or foggy, and he was operating his automobile with the parking lights on and the windshield wipers working. The witness testified that when he reached a point about 500 feet to the north of the Mannheim-Irving Park intersection, he observed traffic backed up in his lane for about 250 feet from

the intersection. He testified that he then decided to turn his vehicle into the inner southbound lane of traffic to avoid the backup.

Dattilo testified that prior to effecting the change of lanes, he looked into the left-hand rearview mirror outside his vehicle and observed traffic in the inner lane behind him. He stated that he was able to see 300 to 400 feet to the rear of his vehicle, and that when he was about 400 feet from the intersection he observed a vehicle in the inner lane behind him. He allowed that vehicle to pass and, not observing any more traffic in that lane to his rear, he changed lanes about 350 feet north of the intersection. The witness also testified that at the time he changed lanes the speed of his vehicle was 25 miles per hour, and that after proceeding in the inner lane about three seconds, or 75 to 100 feet, he felt an impact at the left rear side of his vehicle.

Dattilo testified that after the impact, the Schmidt vehicle, which struck his automobile, traveled southeasterly across the median line of the highway and struck the Gringer vehicle head-on. Dattilo then brought his vehicle to a halt.

Dattilo further testified that at the time he effected the change of lanes prior to the mishap, he did not look into the inside rearview mirror of his vehicle, nor did he look over his shoulder, in an effort to observe traffic in the inner southbound lane behind his vehicle. He also testified that his vehicle was not equipped with automatic directional turn signals, and that he did not, in any manner, indicate his intention to change lanes prior to executing the change. He also testified that when he looked into the outside rearview mirror on his vehicle there was a "blind spot" in his line of vision which extended from 15 to 25 feet to the rear of his vehicle, and he admitted that an automobile could have been in that "blind spot" at the time he looked into the mirror.

Several exhibits entered into evidence reveal that Dattilo's vehicle received minor damage to portions of the left rear bumper and fender.

Diane Gringer testified that she was proceeding north in her automobile on Mannheim Road in the inner lane of traffic, traveling at a speed of about 35 miles per hour. When her vehicle was 200 to 250 feet north of the Irving Park intersection, she observed a southbound vehicle on Mannheim Road change from the outer lane to the inner lane of traffic, and at the same time she observed the Schmidt vehicle enter her lane of traffic. The Schmidt vehicle entered her lane of traffic 10 to 15 feet in front of her vehicle. In a prior deposition the witness testified that she was not certain of the distance between the Dattilo vehicle and the Schmidt vehicle, and that it "could have been a couple hundred feet." The witness later testified in the same deposition that the Dattilo vehicle was 30 to 40 feet from her vehicle when it changed lanes and that

it proceeded about 20 feet before it came into contact with the Schmidt vehicle. The witness further testified at trial that there was "just seconds, it happened so fast" between the time the Dattilo vehicle changed lanes and the time the Schmidt vehicle entered her lane of traffic, and that the Schmidt vehicle was traveling 50 to 55 miles per hour at the time.

Officer Locke testified by deposition that Dattilo volunteered the information that he was involved in the accident when the officer arrived at the scene. The officer testified that there were scratch marks on the right side of the Schmidt vehicle after the mishap, and that there were also paint marks on that side of the vehicle which matched the color of the Dattilo automobile. He stated that he asked Dattilo if he had forced the Schmidt vehicle into the oncoming traffic when he changed lanes and that Dattilo denied it. Officer Rider also testified by deposition and stated that he had a conversation with Dattilo at an inquest following the mishap and that Dattilo told him that he had pulled his vehicle from the outer lane into the inner lane of traffic prior to the mishap.

George Dattilo testified in his own behalf and testified to matters which occurred after the mishap between him and the investigating officers.

Plaintiff maintains that the doctrines of *res judicata* and collateral estoppel are not applicable to the situation at bar because the parties, issues, and subject matter differ from those in the prior actions. We agree.

■■ Before the doctrine of *res judicata* or of estoppel by verdict will be applied, the court will look to what was actually accmplished in the prior proceedings. *Lange v. Coca-Cola Bottling Co.*, 44 Ill.2d 73; *Fraley v. Boyd*, 83 Ill.App.2d 98.

■■ The issue of whether Schmidt was contributorially negligent in regard to the collision between the Schmidt vehicle and the Dattilo vehicle was not determined in either the prior Gringer action or the prior LaVoise action. The issue of Schmidt's negligence was determined only as against Gringer in the action of Gringer against Schmidt and Dattilo, but that action in no way involved his negligence *vis-a-vis* Dattilo relative to the collision which preceded the collision between the Gringer and Schmidt vehicles. Further, the LaVoise action was brought only against Dattilo and in no way involved the question of Schmidt's negligence. (See *Creeco Co. v. Northern Illinois Gas Co.*, 73 Ill.App.2d 218.) On the contrary, the question here involved was to be tested in the Schmidt-Dattilo action; that question remained unanswered at the time of the first series of appeals in these cases, since a new trial had been ordered in the Schmidt-Dattilo matter.

In *Rysdon v. Wice*, 34 Ill.App.2d 290, the court was faced with a factual situation almost identical to the factual situation at bar. In *Rysdon*, automobiles driven by Wice and one Gronsky were involved in a collision on a busy thoroughfare in Chicago. After the collision, the Wice automobile crossed the median line of the road, colliding with the Rysdon automobile. On appeal the court held that certain instructions relating to the negligence of Wice after the initial collision with Gronsky, whether or not Wice was guilty of negligence with respect to the initial collision, were properly given to the jury. A clear distinction is therefore made between the two collisions.

Nor can it be said that this Court's opinion in 81 Ill.App.2d 244 stands as the law of the case as to the question of Schmidt's alleged negligence as against Dattilo, as defendant contends. The only question relating to Schmidt's negligence there dealt with was as to the Gringer collision. The Petition for Leave to Appeal, which directly involved Schmidt's alleged negligence as to Dattilo, was denied.

The cases cited by the defendant in this respect are not in point. Those cases involved the question of negligence on the part of one of two parties whose automobiles were involved in a collision. Actions were brought initially by passengers in the vehicles who were injured, and the negligence of the drivers was fixed. Later actions between the drivers themselves were held barred by estoppel. (See *Lynch v. Chicago Transit Authority*, 62 Ill.App.2d 220; *Franciscy v. Jordan*, 43 Ill.App.2d 344.) Here, on the other hand, there were two separate collisions and consequently two separate opportunities for negligent conduct on the part of the respective parties. Finally, as noted above, the judgment in the LaVoise action, who was a passenger in the Schmidt vehicle, had nothing to do with the question of Schmidt's alleged negligence *vis-a-vis* Dattilo.

■■ There was ample evidence to support the jury's verdict for the plaintiff below; it was error for the trial court to have entered judgment *n.o.v.* for the defendant. (See *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494.)

The mishap occurred about 8:00 A.M. on a wet and foggy day, on Mannheim Road which carried four lanes of traffic at a posted speed limit of 65 miles per hour. Defendant testified that he changed from the outer lane to the inner lane of traffic in order to avoid a traffic backup in the outer lane. He testified that he looked into the outside rearview mirror on his vehicle before he attempted to execute the change, and, observing no traffic in the inner lane but giving no indication of his intention to change, he turned his vehicle into the inner lane of traffic. He stated that there was a "blind spot" in the line of vision from the

outside rearview mirror, and he stated that he did not use the inside rearview mirror nor did he look over his shoulder to observe traffic in the inner lane. Defendant himself admitted at trial that a vehicle could have been within the area of the "blind spot" to which he had testified at the time he looked into the outside rearview mirror. Within seconds he felt an impact by the Schmidt vehicle, and observed the Schmidt vehicle careen into the northbound lanes of traffic. From defendant's own testimony the jury could reasonably have found him guilty of negligence in the operation of his automobile. (See *Hasselbacher v. Mendell,* 119 Ill.App.2d 90, where a motorist was held negligent in failing to ascertain or otherwise warn other motorists in a lane of traffic which he intended to enter.)

■■ Mrs. Gringer testified that she observed the Dattilo vehicle turn into the inner southbound lane of traffic some 40 feet in front of her vehicle and travel a few feet, and then observed the Schmidt vehicle cross into her lane of traffic. She stated that it was a few moments between the time the Dattilo vehicle changed lanes and the time the Schmidt vehicle entered her lane of traffic. There was also evidence that the Schmidt vehicle was traveling well within the posted speed limit and that there were scratches on the side of the Schmidt vehicle and paint which matched the color of the Dattilo vehicle. The question of the discrepancies between Mrs. Gringer's trial testimony and her deposition testimony was one for resolution by the trier of fact.

From the evidence presented the jury could reasonably have found that the Schmidt vehicle was properly within the area of the "blind spot" in Dattilo's line of vision from his outside rearview mirror at the time Dattilo entered the inner lane of traffic, and that his entry into that lane of traffic resulted in the collision between the Schmidt and the Dattilo vehicles, causing the Schmidt vehicle to swerve into the oncoming Gringer automobile.

For these reasons the judgment is reversed and the cause is remanded with directions that the verdict and judgment originally entered for plaintiff be reinstated.

Judgment reversed and cause remanded with directions.

LYONS and GOLDBERG, JJ., concur.