(No. 5390-)

WARD ANDERSON MOVERS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 27, 1971.*

GIFFIN, WINNING, LINDNER, NEWKIRK, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. Webber, Assistant Attorney General, for Respondent.

BURKS, J.

This is a claim for damages to claimant's tractor trailer which ran into a ditch after its driver lost control of his vehicle as he was attempting to pass a snowplow operated by the respondent. Claimant alleged and proved that respondent's snowplow turned from the right lane into and across the left lane in front of claimant's vehicle and that the latter thereupon turned sharply to the right to avoid a collision. In making this sharp right turn, claimant's vehicle jackknifed and came to rest in the ditch on the side of the highway.

The complaint was filed on February 24, 1967, exactly two years and some hours after the mishap in question occurred, approximately 6:00 o'clock in the morning of February 24, 1965. This action, however, was not barred by the statute of limitations as time is computed pursuant to Ch.131, Sec. 1.11, Ill.Rev.Stat., 1973.

The only witness who testified at the hearing was the driver of claimant's vehicle, John Jenkinsen. Respondent did not call any witnesses in its behalf and bases its defense entirely on the testimony of Mr. Jenkinsen. Respondent contends that his testimony does not sustain claimant's burden of proving that respondent's alleged negligence was

the proximate cause of claimant's loss or that claimant was free from contributory negligence.

To arrive at an accurate summation of the relevant facts, it was incumbent upon the Court to make a careful study of the transcript of the testimony presented at the hearing in the light of the conflicting interpretations placed upon it by the briefs submitted by each of the parties.

In the absence of any evidence in the record controverting the testimony of John Jenkinsen, driver of claimant's vehicle, his testimony must be taken as true and correct insofar as it is consistent and not contradictory.

We believe that the pertinent and salient facts in Mr. Jenkinsen's testimony, taken in its entirety and with appropriate inferences arising therefrom, may be summarized as follows:

The early morning accident in question occurred directly west of Springfield, Illinois, on Interstate 55 at a location approximately two miles south of the Clear Lake Avenue access. Interstate 55 is a four-lane highway with two lanes for northbound traffic and two lanes for southbound traffic, divided by a dirt median. A light snow had fallen during the evening before the accident in question.

Mr. Jenkinsen, driving claimant's vehicle, a 1959 International Harvester rig consisting of a cab and trailer fully loaded with nursery stock and having a total weight of about 30 thousand pounds, entered Interstate 55 from Clear Lake Avenue headed south. He had gradually accelerated his speed to 40 or 45 miles per hour when he first observed respondent's snowplow truck about a mile in front of him traveling in the same southerly direction and in the same right hand lane.

Respondent's vehicle was a State-owned and State-operated dump truck, equipped with a snowplow and

appropriate lights, including a mounted rotating yellow caution light which was flashing.

Claimant's driver made the following statement in his testimony, "I would estimate the speed of the snowplow at about 35 to 40 miles an hour. I knew the driver was having trouble since he was swerving in his lane. He had been throwing up a lot of snow and, when he had trouble, he lifted the plow." At another point in his testimony, when asked as to the speed of the snowplow when he "started to make his move to pass", Mr. Jenkinsen answered, "He wasn't going fast at all; that is why I was going to pass him. I couldn't judge what speed he would be going. Let's say he was going around 25 miles an hour. I could tell I was closing the distance and, you know, I would have to pass."

When Mr. Jenkinsen decided to pass and had approached a point approximately 300 feet behind the snow plow, he turned into the left hand passing lane after indicating his intentions to change lanes by use of his turn signals. His left turn signal apparently remained on, but there was no evidence indicating that respondent noticed claimant's vehicle approaching. Claimant did not sound his horn nor give audible signal of his approach.

When claimant's vehicle approached a point approximately 100 feet back of the snowplow, the latter made a turn to the left across the left lane in front of claimant's vehicle and into a "cross over" in the median strip. Respondent's snowplow gave no signal of intention to make a left turn.

At "the very instant" claimant's driver saw that the snowplow had turned into the left lane, approximately 100 feet ahead, he "tapped" his brakes and slowed from 40 miles per hour to 5 miles per hour. At the "last moment" he "swerved" sharply to his right to avoid hitting the snowplow; lost control of his vehicle which jackknifed and came

to rest in the ditch on the west side of the highway about 100 feet south of the cross over into which respondent's snowplow had turned. There was no contact between the vehicles.

On the above statement of facts, we conclude that respondent was negligent in the operation of its snowplow when it made a left turn into the lane of claimant's on-coming vehicle without giving any signal or warning. This conclusion is supported by *Hargrave* vs. *State of Illinois*, 24 C.C.R. 463, which held that the State was negligent in the operation of a snowplow. The Hargrave case also contains the following words which are applicable in this as in all other claims sounding in tort and based on respondent's negligence:

"To recover in this action, claimant must prove by a preponderance of the evidence that not only was respondent negligent, but that claimant was free from contributory negligence."

We have agreed with claimant's contention as to the negligence of the respondent, a contention well supported by the points of law cited in claimant's brief. We now turn to the legal authority cited by the claimant in support of its second essential allegation, required to sustain its burden of proof, that claimant was free from contributory negligence. On this issue, claimant calls our attention to Ch. 95½, Sec. 153, Ill.Rev.Stat., 1973, and to *Rysdon* v. *Wice*, 34 Ill. App. 2d 290; 18 N.E. 2d 754. We have undertaken to apply claimant's cited authority to the facts in this case.

Chap. 95½, Sec. 153 reads as follows:

§ 153. Overtaking a vehicle on the left

The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

(a) The driver of a vehicle overtaking another vehicle proceeding in the

same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

(b) Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.

Subsection (a) appears to support claimant's contention that its vehicle was properly in the left lane when attempting to pass the respondent's snowplow and that under subsection (b) the respondent's snowplow should have given way to the right in favor of the overtaking vehicle on audible signal.

The weakness in claimant's position lies in the fact that claimant gave no audible signal. We believe that this subsection establishes a condition precedent to the duty to yield, and until such time as the overtaking vehicle sounds its horn there is no duty on the driver of an overtaken vehicle to "give way to the right".

Subsection (b) places a duty on the claimant to blow his horn if he expected the vehicle that he was about to pass to remain in or return to the right lane. If claimant's driver did not expect the snowplow to return to the right lane, then he obviously should have turned his rig back into the right lane when he saw the danger approximately 100 feet ahead in the left lane. Failure of the claimant either (1) to make a timely move back to the right lane or (2) blow his horn, indicates that claimant was negligent.

As regards the duty of claimant to blow his horn, let us also look at Section 212 of the same chapter of the statute which reads in part:

"Every motor vehicle of the first and second division when operated on a highway shall be equipped with a horn in good working order and capable of emitting sound under normal conditions audible from a distance of *not less* than 200 feet,°°°. *The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn*°°°." (Emphasis supplied)

We assume that claimant's vehicle was equipped with a

horn capable of giving audible warning, under normal conditions, for a maximum of 200 feet as the statute requires. If so, claimant's driver was certainly in a position to give audible warning of his intention (as per Section 153) or his presence (as per Section 212) at some point between 200 feet and 100 feet distance from respondent at which time claimant alleges that respondent began to make his left turn.

As an experienced semi-trailer truck driver, which Mr. Jenkinsen said he was, he should have known, as he approached a snowplow traveling at a slow speed; one that had just raised its plow; one that was having trouble; one that was swerving in his lane; that here was a situation envisioned by the drafters of Section 212 when they provided that "the driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn." Claimant's failure to give audible warning of his approach under these circumstances violated Section 212 and was, therefore, negligent per se.

We have examined *Rysdon* vs. *Wice*, 34 Ill. App. 2d 290, which claimant cites as authority. This case held that a motorist was not negligent in passing on the left when the automobile being passed negligently veered into and collided with the right rear fender of the passing motorist. The passing motorist, however, was held guilty of negligence in failing to maintain proper control of his vehicle immediately after the said collision when he veered into an oncoming traffic lane and became involved in a head-on collision with another car.

Insofar as there is any similarity of facts, we believe that *Rysdon* supports our conclusion in the case before us. *Rysdon* enunciates the rule that "a person has the duty to exercise due care to control his car even though that car was wrongfully set in motion by the impact of another car."

This rule, when applied to the facts before us in which

there was no contact between vehicles, is even stronger as to a driver's duty to control his vehicle. In the instant case, claimant's driver admits that he lost control of his vehicle even though it had been slowed down to 5 miles per hour. It should also be noted that after respondent's snowplow turned into its cross-over, claimant's vehicle traveled a distance of about 100 feet before leaving the road and going off into the ditch.

We find that both of the parties were guilty of negligence in this case. It is pointless to consider the extent or degree to which each party was negligent, since the doctrine of comparative negligence does not prevail in Illinois. *Chapin* vs. *Foege*, 296 Ill. App. 96. Claimant failed to prove that it was free from contributory negligence.

An award to claimant is, therefore, denied.